IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-187-GMS |
| AMERICAN HONDA MOTOR COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, American Honda Motor Co., Inc., Elesys North America, Inc. and General Motors Corporation (collectively "Defendants"), hereby move for an order (in the form attached hereto as Exhibit A) allowing each of the three Defendants to file its First Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff Automotive Technologies International, Inc. ("ATI")'s First Amended Complaint in the form attached hereto as Exhibit B. Red-lined versions showing changes from the original Answers are attached hereto as Exhibit C. In support of their motion, Defendants state as follows:

1.      On March 17, 2006, ATI filed this action. On May 3, 2006, ATI filed its First Amended Complaint for Patent Infringement which removed the infringement assertions based on U.S. Patent No. 6,950,022 and added the infringement assertions based on U.S. Patent Nos. 6,484,080 and 6,850,824.

2.      Subsequent to the institution of this lawsuit, Defendants have discovered that ATI deceptively withheld certain material prior art from the PTO in the patents-in-suit, or concealed relevant material in a mountain of immaterial prior art. ATI also concealed from the PTO

material information as to litigation involving a parent patent to one of the patents-in-suit, U.S. Patent No. 6,958,451. ATI's actions were conducted with deceptive intent in violation of the duty of candor set forth under 37 C.F.R. § 1.56.

3.     In addition, ATI engaged in the practice of filing numerous "continuation" and "continuation in part" applications. ATI also made numerous assertions of priority claim without merit with deceptive intent to mislead the PTO and interfere with the PTO's meaningful review of ATI's priority claims.

4.     Therefore, Defendants each request leave to file a proposed First Amended Answer, Affirmative Defenses, and Counterclaims, attached as Exhibit B, which incorporate a counterclaim of inequitable conduct against ATI.

5.     Pursuant to the Scheduling Order, Defendants have until February 16, 2007 to move to add a counterclaim of inequitable conduct against ATI. This motion is timely.

6.     Under Rule 15(a), leave to amend pleadings "shall be freely given when justice so requires."

WHEREFORE, Defendants respectfully request an order permitting Defendants to each file an Amended Answer, Affirmative Defenses, and Counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Thomas C. Grimm (#1098)*

Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
tgrimm@mnat.com
bschladweiler@mnat.com
(302) 658-9200
   *Attorneys for Defendants*

2

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL  60611
(312) 321-4200

February 16, 2007
742457

## LOCAL RULE 7.1.1 CERTIFICATE

The undersigned counsel for defendants certifies that counsel for defendants spoke with counsel for plaintiff, who indicated that plaintiff would oppose Defendants' Motion for Leave to File a First Amended Answer, Affirmative Defenses, and Counterclaims.

*/s/ Thomas C. Grimm (#1098)*

Thomas C. Grimm (#1098)
tgrimm@mnat.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007 upon the following individuals in the manner indicated:

### BY HAND & E-MAIL

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE 19801

### BY E-MAIL

> Andrew Kochanowski, Esquire
> SOMMERS SCHWARTZ, P.C.
> 2000 Town Center, Suite 900
> Southfield, MI 48075
> Email: Akochanowski@sommerspc.com

> Michael H. Baniak, Esquire
> MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
> 300 South Wacker Drive
> Chicago, IL 60606
> Email: baniak@mbhb.com

*/s/ Thomas C. Grimm (#1098)*

Thomas C. Grimm (#1098)
tgrimm@mnat.com

742457

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-187-GMS |
| AMERICAN HONDA MOTOR COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

WHEREAS, Defendants filed a Motion for Leave to File First Amended Answer, Affirmative Defenses, and Counterclaims, and

WHEREAS, the Court having found good cause,

IT IS HEREBY ORDERED this _____ day of _____, 2007, that Defendants' Motion is **GRANTED** and Defendants may each file its First Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff Automotive Technologies International, Inc.'s First Amended Complaint in the form attached to the Motion.

_____
The Honorable Gregory M. Sleet
United States District Court Judge

742749

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., ELESYS NORTH AMERICA, INC., and GENERAL MOTORS CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 06-187-GMS |

**FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
OF
ELESYS NORTH AMERICAN, INC.**

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant Elesys North America, Inc. ("ENA") answers the First Amended Complaint of Automotive Technologies International, Inc. ("ATI") as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff Automotive Technologies International, Inc. ("ATI") is a Delaware corporation.

**ANSWER:**

Admitted.

2.    Defendant American Honda Motor Company ("Honda") is a California corporation. Defendant Honda imports and sells in the United States automobiles manufactured in Japan and the United States under the "Honda" and "Acura" names.

**ANSWER**:

ENA is without knowledge or information sufficient to form a belief as to the truth of

allegations in paragraph 2, and therefore denies these allegations.

3.    Defendant Elesys North America, Inc. ("Elesys") is a Georgia corporation. Elesys is a supplier of products to the automotive industry.

**ANSWER:**

ENA admits that it is a Georgia corporation.  ENA admits that it is a supplier of specific

products to certain companies in the automotive industry.  ENA denies the remaining allegations

of paragraph 3.

4.    Defendant General Motors Corporation ("GM") is a Delaware corporation. GM sells vehicles in the United States under the "Buick," "Pontiac," and "Saturn" names, among others.

**ANSWER:**

ENA is without knowledge or information sufficient to form a belief as to the truth of

allegations in paragraph 4, and therefore denies these allegations.

5.    This is an action for patent infringement.  All of the acts of patent infringement complained of in this Complaint occurred, among other places, within this judicial district.

**ANSWER**:

ENA admits that this purports to be an action for alleged patent infringement.  ENA

denies the remaining allegations of paragraph 5.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331 over this infringement action, arising under the Patent Act, 35 U.S.C. § 1 et seq., including §§ 271 and 281-285.

**ANSWER:**

Admitted.

2

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (c) and 28 U.S.C. § 1400(b).  The Court has personal jurisdiction over each of the parties.

**ANSWER:**

Admitted.  Pursuant to 28 U.S.C. § 1404(a), however, venue is most proper in the United States District Court for the Eastern District of Michigan.

## GENERAL ALLEGATIONS

8.      The following patents have been issued duly and legally to Plaintiff ATI on the following dates:

a.      U.S. Patent No, 5,901,978 entitled "Method and Apparatus for Detecting the Presence of a Child Seat," issued May 11, 1999. (Exhibit 1)

b.      U.S. Patent No. 6,242,701 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued June 5, 2001. (Exhibit 2)

c.      U.S. Patent No. 6,325,414 entitled "Method and Arrangement for Controlling Deployment of a Side Airbag," issued December 4,     2001. (Exhibit 3)

d.      U.S. Patent No. 6,397,136 entitled "System for Determining the Occupancy State of a Seat in a Vehicle," issued May 28, 2002. (Exhibit 4)

e.      U.S. Patent No. 6,422,595 entitled "Occupant Position Sensor and Method and Arrangement for Controlling a Vehicular Component  Based on an Occupant's Position," issued July 23, 2002.  (Exhibit 5)

f.      U.S. Patent No. 6,869,100 entitled "Method and Apparatus for Controlling an Airbag," issued March 22, 2005.  (Exhibit 6)

g.      U.S. Patent No. 6,757,602 entitled "System For Determining the Occupancy State of a Seat in a Vehicle and Controlling a Component Based Thereon," issued June 29, 2004.  (Exhibit 7)

h.      U.S. Patent No. 6,712,387 entitled "Method and Apparatus for Controlling Deployment of a Side Airbag," issued March 30, 2004.  (Exhibit 8)

i.      U.S. Patent No. 6,942,248 entitled "Occupant Restraint Device Control System and Method," issued September 13, 2005.  (Exhibit 9)

3

j.     U.S. Patent No. 6,958,451 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued October 25, 2005. (Exhibit 10)

k.     U.S. Patent No. 6,484,080 entitled "Method and Apparatus for Controlling a Vehicular Component," issued November 19, 2002. (Exhibit 11)

l.     U.S. Patent No. 6,850,824 entitled "Method and Apparatus for Controlling a Vehicular Component," issued February 1, 2005. (Exhibit 12)

**ANSWER**:

ENA admits that U.S. Patent Nos. 5,901,978, 6,242,701, 6,325,414, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,712,387, 6,942,248, 6,958,451, 6,484,080 and 6,850,824 ("the ATI Patents") are attached to the Plaintiff's First Amended Complaint as Exhibits 1-12, respectively. ENA admits that ATI is the listed assignee on the face of the ATI Patents. ENA admits that the ATI Patents have titles of inventions and the issue dates identified in paragraph 8, a-l. ENA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and on that basis, denies these allegations.

**PATENT INFRINGEMENT**

9.     All of the patents set forth in paragraph 8, a-l (collectively, "the ATI Patents"), are valid, subsisting, enforceable, and are presently owned by ATI and have been owned by ATI for all times relevant hereto.

**ANSWER:**

ENA denies that all of the patents set forth in paragraph 8, a-l, are valid. ENA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9, and therefore denies these allegations.

10.    The general subjects covered by the ATI Patents include, but are not limited to occupant sensing, position sensing, weight sensing, airbag deployment, and related systems as used in a vehicle containing airbags.

**ANSWER:**

ENA admits that some of the subjects identified in paragraph 10 are addressed in some of the ATI Patents. ENA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10, and therefore denies these allegations.

11.    Among the products made, sold, used, or imported by Elesys are the following:
    a.    "Passenger Sensing System";
    b.    "Seat Sentry System";
    c.    "Occupant Detection System"; and
    d.    "Low Risk Deployment System".

**ANSWER:**

ENA admits that ENA made and sold the electronic control units ("ECUs") and sensor assemblies for the Passenger Sensing System and has imported and sold the ECUs that are used in the Occupant Detection System. The Passenger Sensing System was previously referred to as the Seat Sentry System. ENA admits that ENA has made the Low Risk Deployment System. ENA denies the remaining allegations in paragraph 11.

12.    Elesys sells some or all of the above systems, either singularly or in combination, to Defendants Honda and GM. Upon information and belief, Elesys has supplied Honda since approximately 2001. Upon information and belief, Elesys has supplied GM since 2004. Elesys has recently announced the intention to supply the product systems, or some of them, to approximately 1.1 million additional GM vehicles.

**ANSWER:**

ENA admits that it has sold to GM on a commercial scale the ECUs and the sensor assemblies for the Passenger Sensing System since 2004. ENA admits that it has sold to Honda, through third-parties, the ECUs that are used in the Occupant Detection System since 2005. ENA denies the remaining allegations in paragraph 12.

13.    All of the product systems referenced above infringe, directly or by contributory infringement, the ATI Patents.  None of the Defendants has any right or license from ATI under the ATI Patents.

**ANSWER:**

ENA is aware of a license between ATI and NEC but ATI has failed to produce it in the litigation.  Until it has an opportunity to consider it, ENA is without information or knowledge sufficient to form a belief as to the truth of the whether it has a license under the ATI Patents and therefore denies this allegation.  ENA also denies the remaining allegations in paragraph 13.

14.    Defendant Honda makes, uses, imports and/or sells vehicles with an occupant position detection system called Occupant Position Detection System ("OPDS") in various model Hondas and Acuras sold in the United States.  The OPDS system may vary slightly from model to model, but on information and belief, contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry and/or the Low Risk Deployment System (since 2006).  Certain portions of the OPDS system are supplied by other automotive suppliers.  Among the variations of the OPDS system used in Honda and Acura vehicles is a system employing a strain gage weight sensor and/or seat belt sensors.  The OPDS system comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s).  Upon information and belief, the OPDS system has been used in the following models:

| Year | Model |
|------|-------|
| 2002 | Honda Accord |
| 2003 | Honda Accord |
| 2003 | Honda Civic Hybrid |
| 2004 | Honda Accord |
| 2005 | Honda Odyssey |
| 2005 | Honda Pilot |
| 2005 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2005 | Honda Accord |
| 2005 | Honda Element |
| 2006 | Honda Element |
| 2006 | Honda Accord |
| 2006 | Honda CRV |
| 2006 | Honda Ridgeline |
| 2006 | Honda Civic |
| 2006 | Honda Accord Hybrid |

6

| Year | Model |
|------|-------|
| 2001 | Acura MDX |
| 2002 | Acura MDX |
| 2002 | Acura 3.2 CL |
| 2003 | Acura TL |
| 2003 | Acura MDX |
| 2004 | Acura TL |
| 2004 | Acura MDX |
| 2005 | Acura TL |
| 2005 | Acura MDX |
| 2006 | Acura TSX |
| 2006 | Acura TL |
| 2006 | Acura RL |
| 2006 | Acura MDX |

**ANSWER:**

ENA admits that it has sold to Honda, through third parties, ECUs that are used in the Occupant Position Detection System ("OPDS"). ENA denies that the OPDS contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry System and/or the Low Risk Deployment System. ENA is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 14, and therefore denies these allegations.

15.    Upon information and belief, additional Honda and Acura models to those listed in paragraph 14 have been equipped with the OPDS system, and continue to be sold in the United States with the OPDS system.

**ANSWER:**

ENA is without information or knowledge sufficient to form a belief as to the truth of allegations in paragraph 15, and therefore denies these allegations.

16.    Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents.

**ANSWER:**

7

ENA denies that any product made, sold, offered for sale or used by ENA infringes the

ATI Patents.  ENA is without information or knowledge sufficient to form a belief as to the truth

of the remaining allegations in paragraph 16, and therefore denies these allegations.


17.    Defendant Honda markets and sells these models to the public.  Defendant will
continue to do so unless enjoined by this Court.

**ANSWER:**

ENA is without information or knowledge sufficient to form a belief as to the truth of

allegations in paragraph 17, and therefore denies these allegations.


18.    Defendant GM makes, uses, and sells vehicles which employ some or all of the
Elesys product systems set forth above in paragraph 11, called in some instance, the Passenger
Presence System.   Certain GM vehicles use the Elesys systems in conjunction with seatbelt
sensors.  The Elesys system in GM vehicles comprises and controls, or works in conjunction
with a controller for, among other things, suppressing or allowing the deployment of side airbags
and side curtain airbags in a vehicle equipped with the system(s).   Upon information and belief
the Elesys systems are supplied in the following GM vehicles:

| Year | Model |
|------|-------|
| 2005 | Pontiac G6 |
| 2006 | Pontiac G6 |
| 2005 | Pontiac Grand Prix |
| 2006 | Pontiac Grand Prix |
| 2005 | Saturn Ion |
| 2006 | Saturn Ion |
| 2005 | Saturn Vue |
| 2006 | Saturn Vue |
| 2005 | Buick LaCrosse |
| 2006 | Buick LaCrosse |

**ANSWER:**

ENA admits that it has sold to GM the ECUs and the sensor assemblies for the Passenger

Sensing System.  ENA is without information or knowledge sufficient to form a belief as to the

truth of the remaining allegations in paragraph 18, and therefore denies these allegations.

19.     Upon information and belief, GM makes and sells other models than those listed in Paragraph 17 [sic, 18] with the Passenger Presence System or other-named system using Elesys products.  Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents set forth in paragraph 8, with the exception of the '387, '451, '414, and '701 Patents.  Defendant GM markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

ENA denies that any product made, sold, offered for sale or used by ENA infringes the

ATI Patents.  ENA is without information or knowledge sufficient to form a belief as to the truth

of the remaining allegations in paragraph 19, and therefore denies these allegations.


20.     At least as early as February, 2004, ATI advised Elesys of the existence of various of the above-listed patents and sought to discuss the license of the ATI Patents to Elesys.  Elesys was formed as a joint venture between Defendant Honda and a third-party, NEC, Inc., another automotive supplier.  Upon information and belief, as of February, 2004, Honda had knowledge of various of the ATI patents at issue in this case.  Additionally, certain of the patents at issue in this action have been actually known to NEC and Honda, Japan, earlier than February, 2004.

**ANSWER:**

ENA admits that in or about February 2004, ATI advised ENA of the existence of various

patents and published patent applications allegedly owned by ATI and sought to discuss

licensing of these patents to ENA.  The patents that ATI advised ENA of included the '978, the

'414, the '136, and the '595 patents.  The published patent applications that ATI advised ENA of

included US 2003/0001368 (which later matured into the '100 patent), US 2003/0002690 (which

later matured into the '022), and US2003/0056997 (which later matured into the '451 patent).

ENA denies that ENA was formed as a joint venture between Honda and NEC, Inc.  ENA is

wholly owned by Honda elesys Co., Ltd., which is a joint venture between Honda Motor Co.,

Ltd. and NEC, Inc.  ENA is without information or knowledge sufficient to form a belief as to

the truth of the remaining allegations in paragraph 20, and therefore denies the allegations.

9

21.     In addition to the above, beginning in October, 2005, ATI placed Honda on notice of certain patents at issue in this lawsuit via written communications with Koichi Kondo, William R. Willen, of Honda, and Takeo Oi, Intellectual Property Division of Honda Motor Company, Ltd. in Japan.  As a result, Honda has known of certain if not all of the patents at issue in this case prior to this Complaint.

**ANSWER:**

ENA is without information or knowledge sufficient to form a belief as to the truth of allegations in paragraph 21, and therefore denies these allegations.

## AFFIRMATIVE DEFENSES

Further responding to ATI's First Amended Complaint, ENA asserts the following affirmative defenses and reserves the right to amend its Answer as additional information becomes available:

1.     ATI's claims are barred by laches and estoppel.

2.     ENA incorporates by reference as affirmative defenses the allegations set forth below supporting its Counterclaims.

## COUNTERCLAIMS

For its Counterclaims against ATI, ENA states as follows:

1.     This Court has jurisdiction over these Counterclaims pursuant to Rule 13, Fed. R. Civ. P.  Jurisdiction in this Court also is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper for these Counterclaims because ATI elected this forum for suit and pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Pursuant to 28 U.S.C. § 1404(a), venue is also proper in the United States District Court for the Eastern District of Michigan.

2.     An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of the ATI Patents.

3.     An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of U.S. Patent No. 6,950,022 ("the '022 Patent").  ATI asserted the infringement the '022 Patent in the Complaint based on ENA's supply to Honda and GM and removed the assertions based on the '022 Patent in the First Amended Complaint.

4.     An actual controversy exists between the parties based on ENA's supply to GM as to the asserted infringement of U.S. Patent Nos. 6,712,387 ("the '387 Patent"), 6,958,451 ("the '451 Patent"), 6,325,414 ("the '414 Patent"), and 6,242,701 ("the '701 Patent").  ATI asserted that ENA's supply to GM infringes the '387, '451, '414, and '701 Patents in the Complaint.  ATI removed these assertions in the First Amended Complaint.

## FIRST COUNTERCLAIM

### DECLARATION OF NONINFRINGEMENT OF THE ATI PATENTS

5.     ENA repeats and realleges the allegations of paragraphs 1, 2 and 4 of these Counterclaims.

6.     ENA has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the ATI Patents.

7.     ENA has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the '387, '451, '414, or the '701 Patents by ENA's supply to GM.

## SECOND COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE ATI PATENTS

8.     ENA repeats and realleges the allegations of paragraphs 1, 2 and 4 of these Counterclaims.

9.          The ATI Patents are invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

### THIRD COUNTERCLAIM
### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 6,950,022

10.         ENA repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

11.         ENA has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the '022 Patent.

### FOURTH COUNTERCLAIM
### DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,950,022

12.         ENA repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

13.         The '022 Patent is invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

### FIFTH COUNTERCLAIM
### DECLARATION OF UNENFORCEABLITY OF ATI PATENTS

14.         During the prosecution of the ATI Patents (For purposes of the Fifth Counterclaim all references to "the ATI Patents" includes the '022 Patent), ATI and others substantively involved in the prosecution of the ATI Patents deliberately engaged in a pattern of conduct that was misleading and calculated to mislead the United States Patent Office ("the PTO") into granting ATI patent coverage to which ATI was and is not entitled.

15.         Those involved in this scheme included at least the following individuals at ATI, all of whom were substantively involved in the prosecution of the ATI Patents, Brian Roffe,

12

Samuel Shipkovtz, Karl Milde, David Breed, Wilbur Duvall, Wendell Johnson, and Ray Piirainen.

16.    ATI and others substantively involved in the prosecution of the ATI Patents filed numerous patent applications directed to subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the ATI Patents.

17.    In addition, ATI and those substantively involved in the prosecution of the ATI Patents deliberately concealed from the PTO material prior art and other material information or, in the alternative, in those instances when material prior art was disclosed to the PTO, it was buried in a mountain of immaterial prior art in an effort by ATI to mislead the PTO into overlooking the most material information.

18.    Another tactic employed by ATI and others substantively involved in the prosecution of the ATI Patents was the practice of filing numerous "continuation" and "continuation in part" applications claiming priority to earlier filed ATI applications.   This practice of filing numerous continuation applications was intended to pre-date the prior art activities of others that would have otherwise barred ATI from obtaining patent coverage.  ATI knew or should have known that many of its priority claims were without merit.  Worse yet, ATI's numerous patent filings were designed to be so convoluted that the examiners assigned to examine ATI's various patent applications could not meaningfully review and challenge ATI's priority claims.

19.    In addition, several of the ATI Patents claim (or did claim) priority through a convoluted chain of applications reaching back to patent application serial no. 07/878,571, filed May 5, 1992.   These ATI Patents include at least U.S. Patent Nos. 6,422,595; 6,712,387;

6,325,414; 6,869,100; 6,942,248; and 6,950,022. However, these patents were not entitled to claim priority to application serial no. 07/878,571 because of a lack of co-pendency. Application serial no. 07/878,571 was abandoned on March 23, 1993. The next application in the chain of priority, application serial no. 08/040,978, was not filed until some eight days later, on March 31, 1993. Upon information and belief, one or more persons substantively involved in the prosecution of the ATI Patents were aware of the lack of co-pendency yet ATI nonetheless claimed priority to application serial no. 07/878,571. Moreover, in an effort to cure this lack of co-pendency, ATI and others substantively involved in the prosecution of the ATI Patents, including David Breed and Brain Roffe, were not candid in connection with the Petitions filed under 37 C.F.R. §1.137(b) and the accompanying "Declaration of Facts". The lack of candor related to the explanation provided by ATI for the lengthy delay between the date that application serial no. 07/878,571 was abandoned (e.g., March 23, 1993) and the filing of the aforementioned petitions, the first of which was filed on August 15, 2001. Based upon this lack of candor, the PTO was misled into granting ATI's petition.

20.    The foregoing activities were material and intended by ATI and others substantively involved in the prosecution of the ATI Patents to mislead the PTO. As a result, the ATI Patents are unenforceable by reason of inequitable conduct.

21.    In addition, ATI and others substantively involved in the prosecution of the various ATI Patents committed additional acts of inequitable conduct, which, standing alone, render the below identified patents unenforceable.

**U.S. Patent 6,242,701:**

22.    United States Patent No. 6,242,701 ("the '701 patent") issued on June 5, 2001, from application serial no. 09/193,209, filed November 17, 1998.

14

23.    ATI failed to disclose several material prior art references during the prosecution of the application that issued as the '701 patent. These references include at least U.S. Patent No. 5,942,695 to Verma ("Verma"); U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et. al. (collectively referred to as "Gagnon").

24.    ATI and other substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Verma by at least May 4, 2001. On that date, Verma was cited in an Information Disclosure Statement ("IDS") in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

25.    Upon information and belief, ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Gagnon during the prosecution of the application that issued as the '701 patent.

26.    Verma and Gagnon are prior art to one or more claims of the '701 patent.

27.    Neither Verma nor Gagnon is cumulative to the prior art of record during the prosecution of the '701 patent.

28.    Verma and Gagnon were material to the prosecution of the '701 patent.

29.    The failure to disclose Verma and Gagnon was motivated by an intent to deceive on the part of ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe.

30.    The claims of the '701 patent therefore, are unenforceable by reason of the inequitable conduct committed by ATI and others substantively involved in the prosecution of the '701 patent.

**United States Patent No. 6,958,451:**

31.    United States Patent No. 6,958,451 ("the '451 patent) issued on October 25, 2005, from application serial no. 10/174,803, filed June 19, 2002.

32.    The '451 patent is related to the '701 patent. The '451 patent issued from a chain of continuation-in-part applications and claims priority to the application that issued as the '701 patent. The inequitable conduct committed in connection with the '701 patent is also pertinent and related to the claims of the '451 patent. As such, the claims of the '451 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '701 patent.

33.    Furthermore, ATI and others substantively involved in the prosecution of the '451 patent engaged in further acts of commission and omission during the prosecution of the '451 patent that, standing alone, also render the claims of the '451 patent unenforceable.

34.    ATI and others substantively involved in the prosecution of the '451 patent were aware of various material prior art references during the prosecution of the '451 patent, but failed to disclose this material prior art to the PTO.

35.    One such material prior art reference deliberately concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

36.    Another material prior art reference deliberately concealed from the PTO is ATI's PCT patent application WO94-22693, which was published by at least October 13, 1994.

37.    Another material prior art reference deliberately concealed is U.S. Patent No. 5,482,314 to Corrado. ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, were aware of Corrado by at least November 18, 1996, when it was cited by the PTO in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

38.    U.S. Patent Nos. 5,810,382 and 5,865,463 to Gagnon et al. are additional material prior art references that ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, failed to disclose to the PTO. ATI and others involved in the prosecution of the '451 patent were aware of the Gagnon patents by at least June 25, 2002, when the Gagnon '463 patent was cited in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

39.    Another prior reference that was concealed from the PTO is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '451 patent.

40.    ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe, also failed to disclose material information regarding a litigation involving a related ATI patent, U.S. Patent No. 6,442,504. In that litigation, pursuant to an Order dated September 29, 2004, certain claims of the '504 patent, including claim 1, were held invalid over U.S. Patent Nos. 4,957,286 and 6,101,436. Claim 1 of the '504 patent is similar to at least claims 4, 24, and 34 of the '451 patent. Yet, ATI and others substantively involved in the prosecution failed to disclose to the PTO the existence of the litigation involving the '504 patent, the holding of invalidity of similar claims or the prior art references that were the basis for the invalidity holding.

41.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '451 patent.

42.    The foregoing references and information are material to the examination of the '451 patent.

43. The failure to disclose the foregoing references and information during the prosecution of the '451 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe.

44. For at least the foregoing reasons, the claims of the '451 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent Nos. 6,712,387:**

45. United States Patent No. 6,712,387 ("the '387 patent") issued on March 30, 2004, from application serial no. 09/437,535, filed November 10, 1999.

46. ATI and others substantively involved in the prosecution of the '387 patent were aware of material prior art but deliberately concealed that prior art from the PTO.

47. One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '387 patent.

48. Another material prior art reference deliberately concealed from the PTO is an SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

49. The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '387 patent.

50. The foregoing references and information are material to the examination of the '387 patent.

51. The failure to disclose the foregoing references and information during the prosecution of the '387 patent was motivated by an intent to deceive the PTO on the part of ATI

and others substantively involved in the prosecution of the '387 patent, including David Breed and Brian Roffe.

52.    For at least the foregoing reasons, the claims of the '387 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent No. 6,325,414:**

53.    United States Patent No. 6,325,414 ("the '414 patent") issued on December 4, 2001, from application serial no. 09/737,138, filed December 14, 2000.  The application from which the '414 patent issued was a continuation of the application that issued as the '387 patent.

54.    The '414 patent is related to the '387 patent.  The '414 patent issued from a continuation application and claims priority to the application that issued as the '387 patent.  The inequitable conduct committed in connection with the '387 patent is also pertinent and related to the claims of the '414 patent.  As such, the claims of the '414 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '387 patent.

**United States Patent Nos. 6,484,080:**

55.    United States Patent No. 6,484,080 ('the '080 patent) issued on November 19, 2002, from application serial no. 09/753,186, filed January 2, 2001.

56.    ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, knew of several material prior art references during the prosecution of the '080 patent, yet they deliberately concealed this prior art from the PTO.

57.    One such material prior art reference is U.S. Patent No. 5,602,734 to Kithil.  ATI and others substantive involved in the prosecution of the '080 patent were aware of this prior art reference during the prosecution of another ATI patent application, which later issued as the '978 patent in suit.

58.     Another material prior art reference that was withheld from the PTO is U.S. Patent No. 5,573,269 to Gentry.  ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, were aware of the Gentry reference by at least March 22, 1998, when Gentry was cited in another ATI patent application, which later issued as the '701 patent in suit.

59.     Other material prior art references deliberately concealed from the PTO are U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et al.; U.S Patent No. 5,714,695 to Bruns; U.S. Patent No. 6,039,344 to Mehney; and U.S. Patent No. 6,069,325 (and counterpart EP 0950560 published October 1999).  ATI and others substantively involved in the prosecution of the '080 patent were aware of these references prior to the issue date of the '080 patent.

60.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '080 patent.

61.     The foregoing references and information were material to the examination of the '080 patent.

62.     The failure to disclose the foregoing references and information during the prosecution of the '080 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe.

63.     For at least the foregoing reasons, the claims of the '080 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent 6,850,824**:

64.     United States Patent No. 6,850,824 ("the '824 patent) issued February 1, 2005, from application serial no. 10/613,453, filed July 3, 2003.

65.    The '824 patent is related to the '080 patent. The '824 patent issued from a continuation-in-part application of, and claims priority to, the application that issued as the '080 patent. The inequitable conduct committed in connection with the '080 patent is also pertinent and related to the claims of the '824 patent. As such, the claims of the '824 patent are likewise unenforceable because of the inequitable conduct committed during the prosecution of the '080 patent.

**U.S. Patent No. 6,397,136:**

66.    U.S. Patent No. 6,397,136 ("the '136 patent") issued on May 28, 2002, from application serial no. 09/474,147, filed December 29, 1999.

67.    ATI and other substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of at least several material prior art references during the prosecution of the '136 patent but deliberately concealed this material prior art from the PTO.

68.    One of these prior art references concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

69.    Another material prior reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '136 patent.

70.    Another material prior art reference concealed from the PTO is U.S. Patent No. 5,528,698 to Kamei et al. ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least July 13,

1998, when it was cited by the PTO in another ATI patent application, which later issued as the '978 patent in suit.

71.    U.S. Patent No. 5,525,843 to Howing is another material prior art reference concealed by ATI. ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least April 2, 2002, when ATI cited Howing in an IDS during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,942,248.

72.    WO94-22693, which is a PCT application assigned to ATI and published by at least October 13, 1994, was also concealed from the PTO.

73.    SAE Technical Paper 951051 titled "Occupant Sensing Utilizing Perturbation of Electric Fields", by Jinno et al. was also concealed from the PTO. This paper was published by at least February 1997. ATI and those substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least May 20, 2002, when this reference was cited in an IDS during prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

74.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '136 patent.

75.    The foregoing references and information were material to the examination of the '136 patent.

76.    The failure to disclose the foregoing references and information during the prosecution of the '136 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

77.    For at least the foregoing reasons, the claims of the '136 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,422,595:**

78.    United States Patent No. 6,422,595 ("the '595 patent") issued on July 23, 2002, from application serial no. 09/639,299, filed August 15, 2000.

79.    ATI and others substantively involved in the prosecution of the '595 patent were aware of various material prior art references, yet failed to disclose this information to the PTO during prosecution of the '595 patent.

80.    One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '595 patent.

81.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

82.    Another material prior art reference that was concealed is U.S. Patent No. 5,482,314 to Corrado et al.  ATI and others substantively involved in the prosecution of the '595 patent were aware of Corrado by at least November 18, 1996, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

83.    Also concealed from the PTO was WO97/04984, which published by at least February 13, 1997.  Upon information and belief, ATI and others substantively involved in the prosecution of the '595 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

84.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '595 patent.

85.     The foregoing references and information were material to the examination of the '595 patent.

86.     The failure to disclose the foregoing references and information during the prosecution of the '595 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

87.     For at least the foregoing reasons, the claims of the '595 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 5,901,978:**

88.     United States Patent No. 5,901,978 ("the '978 patent) issued on May 11, 1999, from application serial no. 09/084,641, filed May 26, 1998.

89.     ATI and others substantively involved in the prosecution of the '978 patent were aware of material prior art references but failed to disclose these references to the PTO during prosecution of the '978 patent.

90.     One such reference is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '978 patent.

91.     Another material prior art reference that was concealed is U.S. Patent No. 5,785,347 to Adolph. ATI and others substantively involved in the prosecution of the '978 patent were aware of Adolph by at least March 22, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '701 patent in suit.

24

92.    Another material prior art reference that was concealed is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '978 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the application that issued as the '701 patent in suit.

93.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '978 patent.

94.    The foregoing references and information were material to the examination of the '978 patent.

95.    The failure to disclose the foregoing references and information during the prosecution of the '978 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '978 patent, including David Breed and Brian Roffe.

96.    For at least the foregoing reasons, the claims of the '978 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,942,248:**

97.    United States Patent No. 6,942,248 ("the '248 patent") issued on September 13, 2005, from application serial no. 10/114,533, filed April 2, 2002.

98.    ATI and others substantively involved in the prosecution of the '248 patent were aware of several material prior art references but concealed this prior art from the PTO.

99.    One such reference is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '248 patent.

100.    Another material prior art reference that was concealed is WO95/18028, which was published by at least July 6, 1995.  ATI and others substantively involved in the prosecution

25

of the '248 patent were aware of this reference by at least February 12, 2001, when its counterpart, U.S. Patent No. 5,782,485, was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,529,809.

101.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '248 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the '701 patent in suit.

102.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '248 patent.

103.    The foregoing references and information were material to the examination of the '248 patent.

104.    The failure to disclose the foregoing references and information during the prosecution of the '248 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '248 patent, including David Breed and Brian Roffe.

105.    For at least the foregoing reasons, the claims of the '248 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,757,602:**

106.    United States Patent No. 6,757,602 ("the '602 patent) issued on June 29. 2004. from application serial no. 10/234,436, filed September 2, 2002.

107.    ATI and others substantively involved in the prosecution of the '602 patent failed to disclose a variety of material prior art references and information.

108.    For example, ATI knew of a publication titled "Occupant Sensing Utilizing Pertubation of Electric Fields", SAE Paper No. 951051, by Jinno et al.  The Jinno paper was

published by at least February 24, 1997. ATI and others substantively involved in the prosecution of the '602 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

109.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,474,327 to Schousek. ATI and others substantively involved in the prosecution of the '602 patent were aware of Schousek by at least May 26, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '978 patent in suit.

110.    Another material reference that was concealed form the PTO is U.S. Patent No. 5,732,375 to Cashler. ATI and others substantively involved in the prosecution of the '602 patent were aware of Cashler by at least September 3, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as the '100 patent in suit.

111.    Also concealed was U.S. Patent No. 6,252,240 to Gillis et al. ATI and others substantively involved in the prosecution of the '602 patent were aware of Gillis by at least January 4, 2002, when it was cited in an Office Action during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,474,683.

112.    Another material prior art reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '602 patent.

113.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

114.    U.S Patent No. 5,906,393 to Mazur was also concealed from the PTO.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Mazur by at least June 12, 2000, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 6,168,198.

115.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '602 patent.

116.    The foregoing references and information were material to the examination of the '602 patent.

117.    The failure to disclose the foregoing references and information during the prosecution of the '602 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '602 patent, including David Breed and Brian Roffe.

118.    For at least the foregoing reasons, the claims of the '602 patent are unenforceable by reason of inequitable conduct.

119.    Each of the foregoing activities not only renders one or more of the ATI Patents unenforceable for inequitable conduct, but also any patent that issues from an application that claims priority to or is otherwise related to any application in which inequitable conduct was committed is likewise tainted and unenforceable.

## EXCEPTIONAL CASE

120.    ATI's attempt to read the claims of the patents-in-suit on the activities and products of ENA and ATI's inequitable conduct make this case exceptional under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

**WHEREFORE**, ENA prays for a judgment:

a) dismissing ATI's First Amended Complaint with prejudice;

b) declaring that ENA has not infringed any claim of the ATI Patents and the '022 Patent;

c) declaring that ENA has not infringed any claim of the'387, '451, '414, and '701 Patents by ENA's supply to GM;

d) declaring that the ATI Patents and the '022 Patent are invalid;

e) declaring that the ATI Patents and the '022 Patent are unenforceable due to inequitable conduct;

f) adjudging this case to be an exceptional case pursuant to 35 U.S.C. § 285, and awarding ENA its costs and attorneys' fees; and

g) granting such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

---

Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
tgrimm@mnat.com
bschladweiler@mnat.com
(302) 658-9200
*Attorneys for Defendants*

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL  60611
(312) 321-4200

February 16, 2007
524383

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Richard K. Herrmann, Esquire
MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007, upon the following individuals in the manner indicated:

### BY HAND

Richard K. Herrmann, Esquire
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801

### BY EMAIL

Andrew Kochanowski, Esquire
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI  48075
Email: Akochanowski@sommerspc.com

Michael H. Baniak, Esquire
MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL  60606
Email: baniak@mbhb.com

/s/ Thomas C. Grimm
Thomas C. Grimm (#1098)
tgrimm@mnat.com

524383

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) |
| | ) Civil Action No. 06-187-GMS |
| Plaintiff, | ) ) Judge Gregory M. Sleet |
| v. | ) ) |
| AMERICAN HONDA MOTOR CO., INC., ELESYS NORTH AMERICA, INC., and GENERAL MOTORS CORPORATION, | ) ) ) ) |
| Defendants. | ) ) |

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
## COUNTERCLAIMS OF
## GENERAL MOTORS CORPORATION

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant General Motors Corporation

("GM") answers the First Amended Complaint of Automotive Technologies International,

Inc. ("ATI") as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Automotive Technologies International, Inc. ("ATI") is a
Delaware corporation.

**ANSWER:**

Admitted.


2.     Defendant American Honda Motor Company ("Honda") is a California
corporation.  Defendant Honda imports and sells in the United States automobiles
manufactured in Japan and the United States under the "Honda" and "Acura" names.

**ANSWER**:

GM is without knowledge or information sufficient to form a belief as to the truth

of allegations in paragraph 2, and therefore denies these allegations.

3.    Defendant Elesys North America, Inc. ("Elesys") is a Georgia corporation.
Elesys is a supplier of products to the automotive industry.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of allegations in paragraph 3, and therefore denies these allegations.

4.    Defendant General Motors Corporation ("GM") is a Delaware
corporation. GM sells vehicles in the United States under the "Buick," "Pontiac," and
"Saturn" names, among others.

**ANSWER:**

Admitted.

5.    This is an action for patent infringement.  All of the acts of patent
infringement complained of in this Complaint occurred, among other places, within this
judicial district.

**ANSWER**:

GM admits that this purports to be an action for alleged patent infringement.  GM

denies the remaining allegations of paragraph 5.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a)
and 28 U.S.C. §1331 over this infringement action, arising under the Patent Act, 35
U.S.C. §1 et seq., including §§271 and 281-285.

**ANSWER:**

Admitted.

7.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), (c) and 28
U.S.C. §1400(b).  The Court has personal jurisdiction over each of the parties.

**ANSWER:**

Admitted.  Pursuant to 28 U.S.C. § 1404(a), however, venue is most proper in the

United States District Court for the Eastern District of Michigan.

## GENERAL ALLEGATIONS

8.    The following patents have been issued duly and legally to Plaintiff ATI
on the following dates:

    a.    U.S. Patent No, 5,901,978 entitled "Method and Apparatus for Detecting the Presence of a Child Seat," issued May 11, 1999. (Exhibit 1)

    b.    U.S. Patent No. 6,242,701 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued June 5, 2001.  (Exhibit 2)

    c.    U.S. Patent No. 6,325,414 entitled "Method and Arrangement for Controlling Deployment of a Side Airbag," issued December 4, 2001. (Exhibit 3)

    d.    U.S. Patent No. 6,397,136 entitled "System for Determining the Occupancy State of a Seat in a Vehicle," issued May 28, 2002. (Exhibit 4)

    e.    U.S. Patent No. 6,422,595 entitled "Occupant Position Sensor and Method and Arrangement for Controlling a Vehicular Component Based  on an Occupant's Position," issued July 23, 2002.  (Exhibit 5)

    f.    U.S. Patent No. 6,869,100 entitled "Method and Apparatus for Controlling an Airbag," issued March 22, 2005.  (Exhibit 6)

    g.    U.S. Patent No. 6,757,602 entitled "System For Determining the Occupancy State of a Seat in a Vehicle and Controlling a Component Based Thereon," issued June 29, 2004.  (Exhibit 7)

    h.    U.S. Patent No. 6,712,387 entitled "Method and Apparatus for Controlling Deployment of a Side Airbag," issued March 30, 2004. (Exhibit 8)

    i.    U.S. Patent No. 6,942,248 entitled "Occupant Restraint Device Control System and Method," issued September 13, 2005. (Exhibit 9)

    j.    U.S. Patent No. 6,958,451 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued October 25, 2005.  (Exhibit 10)

    k.    U.S. Patent No. 6,484,080 entitled "Method and Apparatus for Controlling a Vehicular Component," issued November 19, 2002. (Exhibit 11)

    l.    U.S. Patent No. 6,850,824 entitled "Method and Apparatus for Controlling a Vehicular Component," issued February 1, 2005. (Exhibit 12)

**ANSWER**:

GM admits that U.S. Patent Nos. 5,901,978, 6,242,701, 6,325,414, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,712,387, 6,942,248, 6,958,451, 6,484,080 and 6,850,824 ("the ATI Patents") are attached to the Plaintiff's First Amended Complaint as Exhibits 1-12, respectively. GM admits that ATI is the listed assignee on the face of the ATI Patents. GM admits that the ATI Patents have titles of inventions and the issue dates identified in paragraph 8, a-l. GM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and therefore denies the remaining allegations.

## PATENT INFRINGEMENT

9.      All of the patents set forth in paragraph 8, a-l (collectively, "the ATI Patents"), are valid, subsisting, enforceable, and are presently owned by ATI and have been owned by ATI for all times relevant hereto.

**ANSWER:**

GM denies that all of the patents set forth in paragraph 8, a-1, are valid. GM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9, and therefore denies these allegations.

10.      The general subjects covered by the ATI Patents include, but are not limited to occupant sensing, position sensing, weight sensing, airbag deployment, and related systems as used in a vehicle containing airbags.

**ANSWER:**

GM admits that some of the subjects identified in paragraph 10 are addressed in some of the ATI Patents. GM is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10, and therefore denies these allegations.

11.     Among the products made, sold, used, or imported by Elesys are the following:
     a.    "Passenger Sensing System";
     b.    "Seat Sentry System";
     c.    "Occupant Detection System"; and
     d.    "Low Risk Deployment System".

**ANSWER:**

GM admits that Elesys North America, Inc. (ENA) sold the electronic control

units ("ECUs") and sensor assemblies for the Passenger Sensing System to GM.  GM is

without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 11, and therefore denies these allegations.

12.     Elesys sells some or all of the above systems, either singularly or in combination, to Defendants Honda and GM.  Upon information and belief, Elesys has supplied Honda since approximately 2001.  Upon information and belief, Elesys has supplied GM since 2004.  Elesys has recently announced the intention to supply the product systems, or some of them, to approximately 1.1 million additional GM vehicles.

**ANSWER:**

GM admits that ENA has sold the ECUs and the sensor assemblies for the

Passenger Sensing System to GM since at least 2004.  GM is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 12, and therefore denies these allegations.

13.     All of the product systems referenced above infringe, directly or by contributory infringement, the ATI Patents.  None of the Defendants has any right or license from ATI under the ATI Patents.

**ANSWER:**

GM is aware of a license between ATI and NEC but ATI has failed to produce it

in the litigation.  Until it has an opportunity to consider it, GM is without information or

knowledge sufficient to form a belief as to the truth of the whether it has a license under

the ATI Patents and therefore denies this allegation. GM also denies the remaining

allegations in paragraph 13.

14.     Defendant Honda makes, uses, imports and/or sells vehicles with an
occupant position detection system called Occupant Position Detection System ("OPDS")
in various model Hondas and Acuras sold in the United States. The OPDS system may
vary slightly from model to model, but on information and belief, contains the Elesys
Passenger Sensing System, the Occupant Detection System, the Seat Sentry and/or the
Low Risk Deployment System (since 2006). Certain portions of the OPDS system are
supplied by other automotive suppliers. Among the variations of the OPDS system used
in Honda and Acura vehicles is a system employing a strain gage weight sensor and/or
seat belt sensors. The OPDS system comprises and controls, or works in conjunction
with a controller for, among other things, suppressing or allowing the deployment of side
airbags and side curtain airbags in a vehicle equipped with the system(s). Upon
information and belief, the OPDS system has been used in the following models:

| Year | Model |
|------|-------|
| 2002 | Honda Accord |
| 2003 | Honda Accord |
| 2003 | Honda Civic Hybrid |
| 2004 | Honda Accord |
| 2005 | Honda Odyssey |
| 2005 | Honda Pilot |
| 2005 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2005 | Honda Accord |
| 2005 | Honda Element |
| 2006 | Honda Element |
| 2006 | Honda Accord |
| 2006 | Honda CRV |
| 2006 | Honda Ridgeline |
| 2006 | Honda Civic |
| 2006 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2001 | Acura MDX |
| 2002 | Acura MDX |
| 2002 | Acura 3.2 CL |
| 2003 | Acura TL |
| 2003 | Acura MDX |
| 2004 | Acura TL |
| 2004 | Acura MDX |
| 2005 | Acura TL |
| 2005 | Acura MDX |

| 2006 | Acura TSX |
| 2006 | Acura TL |
| 2006 | Acura RL |
| 2006 | Acura MDX |

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 14, and therefore denies these allegations.


15.     Upon information and belief, additional Honda and Acura models to those
listed in paragraph 14 have been equipped with the OPDS system, and continue to be sold
in the United States with the OPDS system.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 15, and therefore denies these allegations.


16.     Each of the vehicles listed above, and those vehicles not specifically listed
but which use the system described above, infringe the ATI Patents.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 16, and therefore denies these allegations.


17.     Defendant Honda markets and sells these models to the public.  Defendant
will continue to do so unless enjoined by this Court.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 17, and therefore denies these allegations.


18.     Defendant GM makes, uses, and sells vehicles which employ some or all
of the Elesys product systems set forth above in paragraph 11, called in some instance,
the Passenger Presence System.  Certain GM vehicles use the Elesys systems in
conjunction with seatbelt sensors.  The Elesys system in GM vehicles comprises and
controls, or works in conjunction with a controller for, among other things, suppressing

or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s).  Upon information and belief the Elesys systems are supplied in the following GM vehicles:

| Year | Model |
|------|-------|
| 2005 | Pontiac G6 |
| 2006 | Pontiac G6 |
| 2005 | Pontiac Grand Prix |
| 2006 | Pontiac Grand Prix |
| 2005 | Saturn Ion |
| 2006 | Saturn Ion |
| 2005 | Saturn Vue |
| 2006 | Saturn Vue |
| 2005 | Buick LaCrosse |
| 2006 | Buick LaCrosse |

**ANSWER:**

GM admits that GM made, used and sold vehicles containing the Passenger

Sensing System.  GM admits that the following vehicles employ the Passenger Sensing

System: 2006 Pontiac G6, 2006 Pontiac Grand Prix, 2006 Saturn Ion, 2006 Saturn Vue,

2005 Buick LaCrosse and 2006 Buick LaCrosse.  GM denies the remaining allegations of

paragraph 18.


19.    Upon information and belief, GM makes and sells other models than those listed in Paragraph 17 [sic, 18] with the Passenger Presence System or other-named system using Elesys products. Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents set forth in paragraph 8, with the exception of the '387, '451, '414, and '701 Patents. Defendant GM markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

GM admits that it marketed and sold to the public vehicles listed in the table of

paragraph 18.  GM denies the remaining allegations in paragraph 19.


20.    At least as early as February, 2004, ATI advised Elesys of the existence of various of the above-listed patents and sought to discuss the license of the ATI Patents to Elesys.  Elesys was formed as a joint venture between Defendant Honda and a third-party, NEC, Inc., another automotive supplier.  Upon information and belief, as of

February, 2004, Honda had knowledge of various of the ATI patents at issue in this case. Additionally, certain of the patents at issue in this action have been actually known to NEC and Honda, Japan, earlier than February, 2004.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 20, and therefore denies these allegations.

21.    In addition to the above, beginning in October, 2005, ATI placed Honda on notice of certain patents at issue in this lawsuit via written communications with Koichi Kondo, William R. Willen, of Honda, and Takeo Oi, Intellectual Property Division of Honda Motor Company, Ltd. in Japan. As a result, Honda has known of certain if not all of the patents at issue in this case prior to this Complaint.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 21, and therefore denies these allegations.

**AFFIRMATIVE DEFENSES**

Further responding to ATI's First Amended Complaint, GM asserts the following

affirmative defenses and reserves the right to amend its Answer as additional information

becomes available:

1.    ATI's claims are barred by laches and estoppel.

2.    GM incorporates by reference as affirmative defenses the allegations set

forth below supporting its Counterclaims.

**COUNTERCLAIMS**

For its Counterclaims against ATI, GM states as follows:

1.    This Court has jurisdiction over these Counterclaims pursuant to Rule 13,

Fed. R. Civ. P. Jurisdiction in this Court also is proper pursuant to 28 U.S.C. §§ 1331,

1338(a), 2201, and 2202. Venue is proper for these Counterclaims because ATI elected this forum for suit and pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). Pursuant to 28 U.S.C. § 1404(a), venue is also proper in the United States District Court for the Eastern District of Michigan.

2.    An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of the U.S. Patent Nos. 5,901,978, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,942,248, 6,484,080, and 6,850,824 ("Patents-in-suit").

## FIRST COUNTERCLAIM
### DECLARATION OF NONINFRINGEMENT OF THE PATENTS-IN-SUIT

3.    GM repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

4.    GM has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the Patents-in-suit.

## SECOND COUNTERCLAIM
### DECLARATION OF INVALIDITY OF THE PATENTS-IN-SUIT

5.    GM repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

6.    The Patents-in-suit are invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

## THIRD COUNTERCLAIM
### DECLARATION OF UNENFORCEABILITY OF ATI PATENTS

7.    During the prosecution of the ATI Patents, ATI and others substantively involved in the prosecution of the ATI patents deliberately engaged in a pattern of

conduct that was misleading and calculated to mislead the United States Patent Office

("the PTO") into granting ATI patent coverage to which ATI was and is not entitled.

8.    Those involved in this scheme included at least the following individuals

at ATI, all of whom were substantively involved in the prosecution of the ATI Patents,

Brian Roffe, Samuel Shipkovtz, Karl Milde, David Breed, Wilbur Duvall, Wendell

Johnson, and Ray Piirainen.

9.    ATI and others substantively involved in the prosecution of the ATI

Patents filed numerous patent applications directed to subject matter that the named

inventors either did not invent or which was not patentable over the prior art known to

those substantively involved in the prosecution of the ATI Patents.

10.    In addition, ATI and those substantively involved in the prosecution of the

ATI Patents deliberately concealed from the PTO material prior art and other material

information or, in the alternative, in those instances when material prior art was disclosed

to the PTO, it was buried in a mountain of immaterial prior art in an effort by ATI to

mislead the PTO into overlooking the most material information.

11.    Another tactic employed by ATI and others substantively involved in the

prosecution of the ATI Patents was the practice of filing numerous "continuation" and

"continuation in part" applications claiming priority to earlier filed ATI applications.

This practice of filing numerous continuation applications was intended to pre-date the

prior art activities of others that would have otherwise barred ATI from obtaining patent

coverage.  ATI knew or should have known that many of its priority claims were without

merit.  Worse yet, ATI's numerous patent filings were designed to be so convoluted that

the examiners assigned to examine ATI's various patent applications could not meaningfully review and challenge ATI's priority claims.

12.     In addition, several of the ATI Patents claim (or did claim) priority through a convoluted chain of applications reaching back to patent application serial no. 07/878,571, filed May 5, 1992. These ATI Patents include at least U.S. Patent Nos. 6,422,595; 6,869,100; and 6,942,248. However, these patents were not entitled to claim priority to application serial no. 07/878,571 because of a lack of co-pendency. Application serial no. 07/878,571 was abandoned on March 23, 1993. The next application in the chain of priority, application serial no. 08/040,978, was not filed until some eight days later, on March 31, 1993. Upon information and belief, one or more persons substantively involved in the prosecution of the ATI Patents were aware of the lack of co-pendency yet ATI nonetheless claimed priority to application serial no. 07/878,571. Moreover, in an effort to cure this lack of co-pendency, ATI and others substantively involved in the prosecution of the ATI Patents, including David Breed and Brain Roffe, were not candid in connection with the Petitions filed under 37 C.F.R. §1.137(b) and the accompanying "Declaration of Facts". The lack of candor related to the explanation provided by ATI for the lengthy delay between the date that application serial no. 07/878,571 was abandoned (e.g., March 23, 1993) and the filing of the aforementioned petitions, the first of which was filed on August 15, 2001. Based upon this lack of candor, the PTO was misled into granting ATI's petition.

13.     The foregoing activities were material and intended by ATI and others substantively involved in the prosecution of the ATI Patents to mislead the PTO. As a result, the ATI Patents are unenforceable by reason of inequitable conduct.

14.     In addition, ATI and others substantively involved in the prosecution of

the various ATI Patents committed additional acts of inequitable conduct, which,

standing alone, render the below identified patents unenforceable.

**United States Patent Nos. 6,484,080:**

15.     United States Patent No. 6,484,080 ('the '080 patent) issued on November

19, 2002, from application serial no. 09/753,186, filed January 2, 2001.

16.     ATI and others substantively involved in the prosecution of the '080

patent, including David Breed and Brian Roffe, knew of several material prior art

references during the prosecution of the '080 patent, yet they deliberately concealed this

prior art from the PTO.

17.     One such material prior art reference is U.S. Patent No. 5,602,734 to

Kithil.  ATI and others substantive involved in the prosecution of the '080 patent were

aware of this prior art reference during the prosecution of another ATI patent application,

which later issued as the '978 patent in suit.

18.     Another material prior art reference that was withheld from the PTO is

U.S. Patent No. 5,573,269 to Gentry.  ATI and others substantively involved in the

prosecution of the '080 patent, including David Breed and Brian Roffe, were aware of the

Gentry reference by at least March 22, 1998, when Gentry was cited in another ATI

patent application, which later issued as U.S. Patent 6,242,701 ("the '701 patent") in suit.

19.     Other material prior art references deliberately concealed from the PTO

are U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et al.; U.S Patent No. 5,714,695

to Bruns; U.S. Patent No. 6,039,344 to Mehney; and U.S. Patent No. 6,069,325 (and

counterpart EP 0950560 published October 1999).  ATI and others substantively involved

in the prosecution of the '080 patent were aware of these references prior to the issue date of the '080 patent.

20.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '080 patent.

21.     The foregoing references and information were material to the examination of the '080 patent.

22.     The failure to disclose the foregoing references and information during the prosecution of the '080 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe.

23.     For at least the foregoing reasons, the claims of the '080 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent 6,850,824:**

24.     United States Patent No. 6,850,824 ("the '824 patent) issued February 1, 2005, from application serial no. 10/613,453, filed July 3, 2003.

25.     The '824 patent is related to the '080 patent.  The '824 patent issued from a continuation-in-part application of, and claims priority to, the application that issued as the '080 patent.  The inequitable conduct committed in connection with the '080 patent is also pertinent and related to the claims of the '824 patent.  As such, the claims of the '824 patent are likewise unenforceable because of the inequitable conduct committed during the prosecution of the '080 patent.

**U.S. Patent No. 6,397,136:**

26.    U.S. Patent No. 6,397,136 ("the '136 patent") issued on May 28, 2002, from application serial no. 09/474,147, filed December 29, 1999.

27.    ATI and other substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of at least several material prior art references during the prosecution of the '136 patent but deliberately concealed this material prior art from the PTO.

28.    One of these prior art references concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

29.    Another material prior reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '136 patent.

30.    Another material prior art reference concealed from the PTO is U.S. Patent No. 5,528,698 to Kamei et al.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least July 13, 1998, when it was cited by the PTO in another ATI patent application, which later issued as the '978 patent in suit.

31.    U.S. Patent No. 5,525,843 to Howing is another material prior art reference concealed by ATI.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by

at least April 2, 2002, when ATI cited Howing in an IDS during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,942,248.

32.    WO94-22693, which is a PCT application assigned to ATI and published by at least October 13, 1994, was also concealed from the PTO.

33.    SAE Technical Paper 951051 titled "Occupant Sensing Utilizing Perturbation of Electric Fields", by Jinno et al. was also concealed from the PTO. This paper was published by at least February 1997. ATI and those substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least May 20, 2002, when this reference was cited in an IDS during prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

34.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '136 patent.

35.    The foregoing references and information were material to the examination of the '136 patent.

36.    The failure to disclose the foregoing references and information during the prosecution of the '136 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

37.    For at least the foregoing reasons, the claims of the '136 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,422,595:**

38.     United States Patent No. 6,422,595 ("the '595 patent") issued on July 23, 2002, from application serial no. 09/639,299, filed August 15, 2000.

39.     ATI and others substantively involved in the prosecution of the '595 patent were aware of various material prior art references, yet failed to disclose this information to the PTO during prosecution of the '595 patent.

40.     One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '595 patent.

41.     Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

42.     Another material prior art reference that was concealed is U.S. Patent No. 5,482,314 to Corrado et al.  ATI and others substantively involved in the prosecution of the '595 patent were aware of Corrado by at least November 18, 1996, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

43.     Also concealed from the PTO was WO97/04984, which published by at least February 13, 1997.  Upon information and belief, ATI and others substantively involved in the prosecution of the '595 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

44.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '595 patent.

45.    The foregoing references and information were material to the examination of the '595 patent.

46.    The failure to disclose the foregoing references and information during the prosecution of the '595 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

47.    For at least the foregoing reasons, the claims of the '595 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 5,901,978:**

48.    United States Patent No. 5,901,978 ("the '978 patent) issued on May 11, 1999, from application serial no. 09/084,641, filed May 26, 1998.

49.    ATI and others substantively involved in the prosecution of the '978 patent were aware of material prior art references but failed to disclose these references to the PTO during prosecution of the '978 patent.

50.    One such reference is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '978 patent.

51.    Another material prior art reference that was concealed is U.S. Patent No. 5,785,347 to Adolph. ATI and others substantively involved in the prosecution of the '978 patent were aware of Adolph by at least March 22, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '701 patent in suit.

52.    Another material prior art reference that was concealed is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '978 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the application that issued as the '701 patent in suit.

53.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '978 patent.

54.    The foregoing references and information were material to the examination of the '978 patent.

55.    The failure to disclose the foregoing references and information during the prosecution of the '978 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '978 patent, including David Breed and Brian Roffe.

56.    For at least the foregoing reasons, the claims of the '978 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,942,248:**

57.    United States Patent No. 6,942,248 ("the '248 patent") issued on September 13, 2005, from application serial no. 10/114,533, filed April 2, 2002.

58.    ATI and others substantively involved in the prosecution of the '248 patent were aware of several material prior art references but concealed this prior art from the PTO.

59.    One such reference is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David

Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '248 patent.

60.     Another material prior art reference that was concealed is WO95/18028, which was published by at least July 6, 1995.  ATI and others substantively involved in the prosecution of the '248 patent were aware of this reference by at least February 12, 2001, when its counterpart, U.S. Patent No. 5,782,485 was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,529,809.

61.     Another material prior art reference concealed by ATI is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '248 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the '701 patent in suit.

62.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '248 patent.

63.     The foregoing references and information were material to the examination of the '248 patent.

64.     The failure to disclose the foregoing references and information during the prosecution of the '248 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '248 patent, including David Breed and Brian Roffe.

65.     For at least the foregoing reasons, the claims of the '248 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,757,602:**

66.     United States Patent No. 6,757,602 ("the '602 patent) issued on June 29. 2004. from application serial no. 10/234,436, filed September 2, 2002.

67.     ATI and others substantively involved in the prosecution of the '602 patent failed to disclose a variety of material prior art references and information.

68.     For example, ATI knew of a publication titled "Occupant Sensing Utilizing Pertubation of Electric Fields", SAE Paper No. 951051, by Jinno et al.  The Jinno paper was published by at least February 24, 1997.  ATI and others substantively involved in the prosecution of the '602 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

69.     Another material prior art reference concealed by ATI is U.S. Patent No. 5,474,327 to Schousek.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Schousek by at least May 26, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '978 patent in suit.

70.     Another material reference that was concealed form the PTO is U.S. Patent No. 5,732,375 to Cashler.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Cashler by at least September 3, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as the '100 patent in suit.

71.     Also concealed was U.S. Patent No. 6,252,240 to Gillis et al.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Gillis by at least January 4, 2002, when it was cited in an Office Action during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,474,683.

72.    Another material prior art reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '602 patent.

73.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

74.    U.S Patent No. 5,906,393 to Mazur was also concealed from the PTO. ATI and others substantively involved in the prosecution of the '602 patent were aware of Mazur by at least June 12, 2000, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 6,168,198.

75.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '602 patent.

76.    The foregoing references and information were material to the examination of the '602 patent.

77.    The failure to disclose the foregoing references and information during the prosecution of the '602 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '602 patent, including David Breed and Brian Roffe.

78.    For at least the foregoing reasons, the claims of the '602 patent are unenforceable by reason of inequitable conduct.

79.     Each of the foregoing activities not only renders one or more of the ATI Patents unenforceable for inequitable conduct, but also any patent that issues from an application that claims priority to or is otherwise related to any application in which inequitable conduct was committed is likewise tainted and unenforceable.

**EXCEPTIONAL CASE**

ATI's attempt to read the claims of the patents-in-suit on the activities and products of GM and ATI's inequitable conduct make this case exceptional under 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

**WHEREFORE**, GM prays for a judgment:

a)  dismissing ATI's First Amended Complaint with prejudice;

b)  declaring that GM has not infringed any claim of the Patents-in-suit;

c)  declaring that the Patents-in-suit are invalid;

d)  declaring that the ATI Patents are unenforceable due to inequitable conduct;

e)  adjudging this case to be an exceptional case pursuant to 35 U.S.C. § 285, and awarding GM its costs and attorney fees; and

f)  granting such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE

_____
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
bschladweiler@mnat.com

455 N. Cityfront Plaza Drive                Attorneys for General Motors Corporation
NBC Tower, Suite 3600
Chicago, IL  60611-5599
(312) 321-4200

February 14, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007, upon the following individuals in the manner indicated:

### BY HAND

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE  19801

### BY EMAIL

> Andrew Kochanowski, Esquire
> SOMMERS SCHWARTZ, P.C.
> 2000 Town Center, Suite 900
> Southfield, MI  48075
> Email: Akochanowski@sommerspc.com

> Michael H. Baniak, Esquire
> MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
> 300 South Wacker Drive
> Chicago, IL  60606
> Email: baniak@mbhb.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                                      |   |                                |
|------------------------------------------------------|---|--------------------------------|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC.,         | ) |                                |
|                                                      | ) | Civil Action No. 06-187-GMS    |
|                                                      | ) |                                |
| Plaintiff,                                           | ) | Judge Gregory M. Sleet         |
|                                                      | ) |                                |
| v.                                                   | ) |                                |
|                                                      | ) |                                |
| AMERICAN HONDA MOTOR CO., INC.,                      | ) |                                |
| ELESYS NORTH AMERICA, INC., and                      | ) |                                |
| GENERAL MOTORS CORPORATION,                          | ) |                                |
|                                                      | ) |                                |
| Defendants.                                          | ) |                                |

**FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND**
**COUNTERCLAIMS OF**
**AMERICAN HONDA MOTOR CO., INC.**

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant American Honda Motor Co., Inc.

("Honda"), answers the First Amended Complaint of Automotive Technologies

International, Inc. ("ATI") as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff Automotive Technologies International, Inc. ("ATI") is a
Delaware corporation.

**ANSWER:**

Admitted.


2.      Defendant American Honda Motor Company ("Honda") is a California
corporation.  Defendant Honda imports and sells in the United States automobiles
manufactured in Japan and the United States under the "Honda" and "Acura" names.

**ANSWER**:

Honda admits that it is a California corporation.  Honda admits that it imports and sells in the United States certain vehicles manufactured in Japan under the "Honda" and "Acura" names.  Honda admits that it sells in the United States vehicles manufactured in the United States under the "Honda" and "Acura" names.


3.     Defendant Elesys North America, Inc. ("Elesys") is a Georgia corporation. Elesys is a supplier of products to the automotive industry.

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 3, and therefore denies these allegations.


4.     Defendant General Motors Corporation ("GM") is a Delaware corporation. GM sells vehicles in the United States under the "Buick," "Pontiac," and "Saturn" names, among others.

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 4, and therefore denies these allegations.


5.     This is an action for patent infringement.  All of the acts of patent infringement complained of in this Complaint occurred, among other places, within this judicial district.


**ANSWER**:

Honda admits that this purports to be an action for alleged patent infringement.

Honda denies the remaining allegations of paragraph 5.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331 over this infringement action, arising under the Patent Act, 35 U.S.C. §1 et seq., including §§271 and 281-285.

2

**ANSWER:**

Admitted.

7.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), (c) and 28 U.S.C. §1400(b).  The Court has personal jurisdiction over each of the parties.

**ANSWER:**

Admitted.  Pursuant to 28 U.S.C. § 1404(a), however, venue is most proper in the

United States District Court for the Eastern District of Michigan.

**JURISDICTION AND VENUE**

8.    The following patents have been issued duly and legally to Plaintiff ATI on the following dates:

a.    U.S. Patent No, 5,901,978 entitled "Method and Apparatus for Detecting the Presence of a Child Seat," issued May 11, 1999. (Exhibit 1)

b.    U.S. Patent No. 6,242,701 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued June 5, 2001.  (Exhibit 2)

c.    U.S. Patent No. 6,325,414 entitled "Method and Arrangement for Controlling Deployment of a Side Airbag," issued December 4, 2001.  (Exhibit 3)

d.    U.S. Patent No. 6,397,136 entitled "System for Determining the Occupancy State of a Seat in a Vehicle," issued May 28, 2002. (Exhibit 4)

e.    U.S. Patent No. 6,422,595 entitled "Occupant Position Sensor and Method and Arrangement for Controlling a Vehicular Component Based on an Occupant's Position," issued July 23, 2002.  (Exhibit 5)

f.    U.S. Patent No. 6,869,100 entitled "Method and Apparatus for Controlling an Airbag," issued March 22, 2005.  (Exhibit 6)

g.    U.S. Patent No. 6,757,602 entitled "System For Determining the Occupancy State of a Seat in a Vehicle and Controlling a Component Based Thereon," issued June 29, 2004.  (Exhibit 7)

h.    U.S. Patent No. 6,712,387 entitled "Method and Apparatus for Controlling Deployment of a Side Airbag," issued March 30, 2004. (Exhibit 8)

i.    U.S. Patent No. 6,942,248 entitled "Occupant Restraint Device Control System and Method," issued September 13, 2005. (Exhibit 9)

3

  j. U.S. Patent No. 6,958,451 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued October 25, 2005.  (Exhibit 10)

  k. U.S. Patent No. 6,484,080 entitled "Method and Apparatus for Controlling a Vehicular Component," issued November 19, 2002. (Exhibit 11)

  l. U.S. Patent No. 6,850,824 entitled "Method and Apparatus for Controlling a Vehicular Component," issued February 1, 2005. (Exhibit 12)

**ANSWER**:

 Honda admits that U.S. Patent Nos. 5,901,978, 6,242,701, 6,325,414, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,712,387, 6,942,248, 6,958,451, 6,484,080 and 6,850,824 ("the ATI Patents") are attached to the Plaintiff's First Amended Complaint as Exhibits 1-12, respectively.  Honda admits that ATI is the listed assignee on the face of the ATI Patents.  Honda admits that the ATI Patents have titles of inventions and the issue dates identified in paragraph 8, a-l.  Honda is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and on that basis, denies these allegations.

**PATENT INFRINGEMENT**

 9. All of the patents set forth in paragraph 8, a-l (collectively, "the ATI Patents"), are valid, subsisting, enforceable, and are presently owned by ATI and have been owned by ATI for all times relevant hereto.

**ANSWER:**

 Honda denies that all of the patents set forth in paragraph 8, a-l, are valid.  Honda is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9, and therefore denies these allegations.

10.    The general subjects covered by the ATI Patents include, but are not limited to occupant sensing, position sensing, weight sensing, airbag deployment, and related systems as used in a vehicle containing airbags.

**ANSWER:**

Honda admits that some of the subjects identified in paragraph 10 are addressed

in some of the ATI Patents.  Honda is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in paragraph 10, and therefore

denies these allegations.

11.    Among the products made, sold, used, or imported by Elesys are the following:
a.    "Passenger Sensing System";
b.    "Seat Sentry System";
c.    "Occupant Detection System"; and
d.    "Low Risk Deployment System".

**ANSWER:**

Honda admits that Elesys North America, Inc. ("ENA") has supplied to Honda,

through third-parties, electronic control units ("ECUs") that are used in the Occupant

Detection System.  Honda is without knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 11, and therefore denies the allegations.

12.    Elesys sells some or all of the above systems, either singularly or in combination, to Defendants Honda and GM.  Upon information and belief, Elesys has supplied Honda since approximately 2001.  Upon information and belief, Elesys has supplied GM since 2004.  Elesys has recently announced the intention to supply the product systems, or some of them, to approximately 1.1 million additional GM vehicles.

**ANSWER:**

Honda admits that ENA has supplied to Honda, through third-parties, the ECUs

that are used in the Occupant Detection System since 2005.  Honda is without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 12, and therefore denies the remaining allegations.

13.     All of the product systems referenced above infringe, directly or by contributory infringement, the ATI Patents.  None of the Defendants has any right or license from ATI under the ATI Patents.

**ANSWER:**

Honda is aware of a license between ATI and NEC but ATI has failed to produce

it in the litigation.  Until it has an opportunity to consider it, Honda is without

information or knowledge sufficient to form a belief as to the truth of the whether it has a

license under the ATI Patents and therefore denies this allegation.  Honda also denies the

remaining allegations in paragraph 13.

14.     Defendant Honda makes, uses, imports and/or sells vehicles with an occupant position detection system called Occupant Position Detection System ("OPDS") in various model Hondas and Acuras sold in the United States.  The OPDS system may vary slightly from model to model, but on information and belief, contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry and/or the Low Risk Deployment System (since 2006).  Certain portions of the OPDS system are supplied by other automotive suppliers.  Among the variations of the OPDS system used in Honda and Acura vehicles is a system employing a strain gage weight sensor and/or seat belt sensors.  The OPDS system comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s).  Upon information and belief, the OPDS system has been used in the following models:

| Year | Model |
| --- | --- |
| 2002 | Honda Accord |
| 2003 | Honda Accord |
| 2003 | Honda Civic Hybrid |
| 2004 | Honda Accord |
| 2005 | Honda Odyssey |
| 2005 | Honda Pilot |
| 2005 | Honda Accord Hybrid |

| Year | Model |
| --- | --- |
| 2005 | Honda Accord |
| 2005 | Honda Element |
| 2006 | Honda Element |

| 2006 | Honda Accord |
|------|--------------|
| 2006 | Honda CRV |
| 2006 | Honda Ridgeline |
| 2006 | Honda Civic |
| 2006 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2001 | Acura MDX |
| 2002 | Acura MDX |
| 2002 | Acura 3.2 CL |
| 2003 | Acura TL |
| 2003 | Acura MDX |
| 2004 | Acura TL |
| 2004 | Acura MDX |
| 2005 | Acura TL |
| 2005 | Acura MDX |
| 2006 | Acura TSX |
| 2006 | Acura TL |
| 2006 | Acura RL |
| 2006 | Acura MDX |

**ANSWER:**

Honda admits that it imported certain vehicles listed in the tables of paragraph 14 in the United States.  Honda admits that it sold in the United States vehicles listed in the tables of paragraph 14.  Honda admits that ENA has supplied to Honda, through third-parties, the ECUs that are used in the Occupant Position Detection System ("the OPDS").  Honda admits that the sensors for the OPDS have been provided, through third-parties, by a supplier other than ENA.   Honda admits that the OPDS is for use with a side airbag system.   Honda admits that the OPDS has been used in the following vehicle models: 2002, 2003 and 2004 Honda Accord as an option, 2005 Honda Odyssey, 2005 Honda Pilot, 2005 Honda Accord Hybrid, 2005 Honda Accord, 2005 and 2006 Honda Element as an option, 2006 Honda CRV, 2006 Honda Accord Hybrid, 2001, 2002, 2003, 2004, 2005 and 2006 Acura MDX, 2002 Acura 3.2.CL, 2003, 2004, 2005 and 2006 Acura TL, and 2006 Accura RL.  Honda denies the remaining allegations in paragraph 14.

7

15.    Upon information and belief, additional Honda and Acura models to those listed in paragraph 14 have been equipped with the OPDS system, and continue to be sold in the United States with the OPDS system.

**ANSWER:**

Honda admits that certain Honda and Acura vehicles having the OPDS are not

listed in the tables of paragraph 14.  Honda denies the remaining allegations in paragraph

15.

16.    Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents.

**ANSWER:**

Honda denies that any Honda or Acura model vehicle, or any system used therein,

infringes the ATI Patents.  Honda is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in paragraph 16, and therefore denies

the remaining allegations.

17.    Defendant Honda markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

Honda admits that Honda markets and sells to the public the models identified in

the tables of paragraph 14.  Honda denies the remaining allegations of paragraph 17.

18.    Defendant GM makes, uses, and sells vehicles which employ some or all of the Elesys product systems set forth above in paragraph 11, called in some instance, the Passenger Presence System.  Certain GM vehicles use the Elesys systems in conjunction with seatbelt sensors.  The Elesys system in GM vehicles comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s).  Upon information and belief the Elesys systems are supplied in the following GM vehicles:

| Year | Model |
|------|-------|
| 2005 | Pontiac G6 |

8

| 2006 | Pontiac G6 |
| 2005 | Pontiac Grand Prix |
| 2006 | Pontiac Grand Prix |
| 2005 | Saturn Ion |
| 2006 | Saturn Ion |
| 2005 | Saturn Vue |
| 2006 | Saturn Vue |
| 2005 | Buick LaCrosse |
| 2006 | Buick LaCrosse |

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the

truth of allegations in paragraph 18, and therefore denies the allegations.

19.    Upon information and belief, GM makes and sells other models than those listed in Paragraph 17 [sic, 18] with the Passenger Presence System or other-named system using Elesys products.  Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents set forth in paragraph 8, with the exception of the '387, '451, '414, and '701 Patents. Defendant GM markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the

truth of allegations in paragraph 19, and therefore denies the allegations.

20.    At least as early as February, 2004, ATI advised Elesys of the existence of various of the above-listed patents and sought to discuss the license of the ATI Patents to Elesys.  Elesys was formed as a joint venture between Defendant Honda and a third-party, NEC, Inc., another automotive supplier.  Upon information and belief, as of February, 2004, Honda had knowledge of various of the ATI patents at issue in this case. Additionally, certain of the patents at issue in this action have been actually known to NEC and Honda, Japan, earlier than February, 2004.

**ANSWER:**

Honda denies that ENA was formed as a joint venture between Honda and NEC,

Inc.  ENA is wholly owned by Honda elesys Co., Ltd., which is a joint venture between

Honda Motor Co., Ltd. and NEC, Inc.  Honda denies that it had knowledge of "various of

the ATI patents at issue in this case" as of February 2004. Honda is without knowledge

or information sufficient to form a belief to the truth of the remaining allegations in

paragraph 20, and therefore denies these allegations.

21.    In addition to the above, beginning in October, 2005, ATI placed Honda
on notice of certain patents at issue in this lawsuit via written communications with
Koichi Kondo, William R. Willen, of Honda, and Takeo Oi, Intellectual Property
Division of Honda Motor Company, Ltd. in Japan. As a result, Honda has known of
certain if not all of the patents at issue in this case prior to this Complaint.

**ANSWER:**

Honda admits that ATI sent Koichi Kondo and William R. Willen, respectively,

letters dated October 14, 2005, with respect to the '701 patent. Honda admits that ATI

sent Takeo Oi, Manager of Intellectual Property Division of Honda Motor Co., Ltd. in

Japan a letter dated January 26, 2006, with respect to the '701, the '978, the '414, the

'136, the '595, the '100, the '602, the '387, the '248, the '451, and the '080 patents.

Honda admits that it had knowledge of the '701 prior to ATI's Complaint. Honda denies

the remaining allegations in paragraph 21.


**AFFIRMATIVE DEFENSES**

Further responding to ATI's First Amended Complaint, Honda asserts the

following affirmative defenses and reserves the right to amend its Answer as additional

information becomes available:

1.    ATI's claims are barred by laches and estoppel.

2.    Honda incorporates by reference as affirmative defenses the allegations set

forth below supporting its Counterclaims.


**COUNTERCLAIMS**

10

For its Counterclaims against ATI, Honda states as follows:

1.     This Court has jurisdiction over these Counterclaims pursuant to Rule 13, Fed. R. Civ. P.  Jurisdiction in this Court also is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper for these Counterclaims because ATI elected this forum for suit and pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Pursuant to 28 U.S.C. § 1404(a), venue is also proper in the United States District Court for the Eastern District of Michigan.

2.     An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of the ATI Patents.

3.     An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of U.S. Patent No. 6,950,022 ("the '022 Patent").  ATI asserted the infringement, validity and enforceability of the '022 Patent in the Complaint and removed the assertions based on the '022 Patent in the First Amended Complaint.

## FIRST COUNTERCLAIM

### DECLARATION OF NONINFRINGEMENT OF THE ATI PATENTS

4.     Honda repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

5.     Honda has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the ATI Patents.

## SECOND COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE ATI PATENTS

6.     Honda repeats and realleges the allegations of paragraphs 1 through 2 of

11

these Counterclaims.

7.    The ATI Patents are invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

## THIRD COUNTERCLAIM
### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 6,950,022

8.    Honda repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

9.    Honda has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the '022 Patent.

## FOURTH COUNTERCLAIM
### DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,950,022

10.    Honda repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

11.    The '022 Patent is invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

## FIFTH COUNTERCLAIM
### DECLARATION OF UNENFORCEABLITY OF ATI PATENTS

12.    During the prosecution of the ATI Patents (For purposes of the Fifth Counterclaim all references to "the ATI Patents" includes the '022 Patent), ATI and others substantively involved in the prosecution of the ATI Patents deliberately engaged in a pattern of conduct that was misleading and calculated to mislead the United States Patent Office ("the PTO") into granting ATI patent coverage to which ATI was and is not

12

entitled.

13.   Those involved in this scheme included at least the following individuals at ATI, all of whom were substantively involved in the prosecution of the ATI Patents, Brian Roffe, Samuel Shipkovtz, Karl Milde, David Breed, Wilbur Duvall, Wendell Johnson, and Ray Piirainen.

14.   ATI and others substantively involved in the prosecution of the ATI Patents filed numerous patent applications directed to subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the ATI Patents.

15.   In addition, ATI and those substantively involved in the prosecution of the ATI Patents deliberately concealed from the PTO material prior art and other material information or, in the alternative, in those instances when material prior art was disclosed to the PTO, it was buried in a mountain of immaterial prior art in an effort by ATI to mislead the PTO into overlooking the most material information.

16.   Another tactic employed by ATI and others substantively involved in the prosecution of the ATI Patents was the practice of filing numerous "continuation" and "continuation in part" applications claiming priority to earlier filed ATI applications. This practice of filing numerous continuation applications was intended to pre-date the prior art activities of others that would have otherwise barred ATI from obtaining patent coverage.  ATI knew or should have known that many of its priority claims were without merit.  Worse yet, ATI's numerous patent filings were designed to be so convoluted that the examiners assigned to examine ATI's various patent applications could not meaningfully review and challenge ATI's priority claims.

17.     In addition, several of the ATI Patents claim (or did claim) priority

through a convoluted chain of applications reaching back to patent application serial no.

07/878,571, filed May 5, 1992.  These ATI Patents include at least U.S. Patent Nos.

6,422,595; 6,712,387; 6,325,414; 6,869,100; 6,942,248; and 6,950,022.  However, these

patents were not entitled to claim priority to application serial no. 07/878,571 because of

a lack of co-pendency.  Application serial no. 07/878,571 was abandoned on March 23,

1993.  The next application in the chain of priority, application serial no. 08/040,978, was

not filed until some eight days later, on March 31, 1993.  Upon information and belief,

one or more persons substantively involved in the prosecution of the ATI Patents were

aware of the lack of co-pendency yet ATI nonetheless claimed priority to application

serial no. 07/878,571.  Moreover, in an effort to cure this lack of co-pendency, ATI and

others substantively involved in the prosecution of the ATI Patents, including David

Breed and Brain Roffe, were not candid in connection with the Petitions filed under 37

C.F.R. §1.137(b) and the accompanying "Declaration of Facts".  The lack of candor

related to the explanation provided by ATI for the lengthy delay between the date that

application serial no. 07/878,571 was abandoned (e.g., March 23, 1993) and the filing of

the aforementioned petitions, the first of which was filed on August 15, 2001.  Based

upon this lack of candor, the PTO was misled into granting ATI's petition.

18.     The foregoing activities were material and intended by ATI and others

substantively involved in the prosecution of the ATI Patents to mislead the PTO.  As a

result, the ATI Patents are unenforceable by reason of inequitable conduct.

19.     In addition, ATI and others substantively involved in the prosecution of

the various ATI Patents committed additional acts of inequitable conduct, which,

14

standing alone, render the below identified patents unenforceable.

### U.S. Patent 6,242,701:

20.    United States Patent No. 6,242,701 ("the '701 patent") issued on June 5, 2001, from application serial no. 09/193,209, filed November 17, 1998.

21.    ATI failed to disclose several material prior art references during the prosecution of the application that issued as the '701 patent. These references include at least U.S. Patent No. 5,942,695 to Verma ("Verma"); U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et. al. (collectively referred to as "Gagnon").

22.    ATI and other substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Verma by at least May 4, 2001. On that date, Verma was cited in an Information Disclosure Statement ("IDS") in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

23.    Upon information and belief, ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Gagnon during the prosecution of the application that issued as the '701 patent.

24.    Verma and Gagnon are prior art to one or more claims of the '701 patent.

25.    Neither Verma nor Gagnon is cumulative to the prior art of record during the prosecution of the '701 patent.

26.    Verma and Gagnon were material to the prosecution of the '701 patent.

27.    The failure to disclose Verma and Gagnon was motivated by an intent to deceive on the part of ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe.

15

28.     The claims of the '701 patent therefore, are unenforceable by reason of the inequitable conduct committed by ATI and others substantively involved in the prosecution of the '701 patent.

**United States Patent No. 6,958,451:**

29.     United States Patent No. 6,958,451 ("the '451 patent) issued on October 25, 2005, from application serial no. 10/174,803, filed June 19, 2002.

30.     The '451 patent is related to the '701 patent. The '451 patent issued from a chain of continuation-in-part applications and claims priority to the application that issued as the '701 patent. The inequitable conduct committed in connection with the '701 patent is also pertinent and related to the claims of the '451 patent. As such, the claims of the '451 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '701 patent.

31.     Furthermore, ATI and others substantively involved in the prosecution of the '451 patent engaged in further acts of commission and omission during the prosecution of the '451 patent that, standing alone, also render the claims of the '451 patent unenforceable.

32.     ATI and others substantively involved in the prosecution of the '451 patent were aware of various material prior art references during the prosecution of the '451 patent, but failed to disclose this material prior art to the PTO.

33.     One such material prior art reference deliberately concealed from the PTO is  SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

34.     Another material prior art reference deliberately concealed from the PTO

16

is ATI's PCT patent application WO94-22693, which was published by at least October 13, 1994.

35.     Another material prior art reference deliberately concealed is U.S. Patent No. 5,482,314 to Corrado. ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, were aware of Corrado by at least November 18, 1996, when it was cited by the PTO in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

36.     U.S. Patent Nos. 5,810,382 and 5,865,463 to Gagnon et al. are additional material prior art references that ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, failed to disclose to the PTO. ATI and others involved in the prosecution of the '451 patent were aware of the Gagnon patents by at least June 25, 2002, when the Gagnon '463 patent was cited in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

37.     Another prior reference that was concealed from the PTO is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '451 patent.

38.     ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe, also failed to disclose material information regarding a litigation involving a related ATI patent, U.S. Patent No. 6,442,504. In that litigation, pursuant to an Order dated September 29, 2004, certain claims of the '504 patent, including claim 1, were held invalid over U.S. Patent Nos. 4,957,286 and 6,101,436. Claim 1 of the '504 patent is similar to at least claims 4, 24,

and 34 of the '451 patent. Yet, ATI and others substantively involved in the prosecution failed to disclose to the PTO the existence of the litigation involving the '504 patent, the holding of invalidity of similar claims or the prior art references that were the basis for the invalidity holding.

39.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '451 patent.

40.     The foregoing references and information are material to the examination of the '451 patent.

41.     The failure to disclose the foregoing references and information during the prosecution of the '451 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe.

42.     For at least the foregoing reasons, the claims of the '451 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent Nos. 6,712,387:**

43.     United States Patent No. 6,712,387 ("the '387 patent") issued on March 30, 2004, from application serial no. 09/437,535, filed November 10, 1999.

44.     ATI and others substantively involved in the prosecution of the '387 patent were aware of material prior art but deliberately concealed that prior art from the PTO.

45.     One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '387 patent.

18

46.     Another material prior art reference deliberately concealed from the PTO is an SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

47.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '387 patent.

48.     The foregoing references and information are material to the examination of the '387 patent.

49.     The failure to disclose the foregoing references and information during the prosecution of the '387 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '387 patent, including David Breed and Brian Roffe.

50.     For at least the foregoing reasons, the claims of the '387 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent No. 6,325,414:**

51.     United States Patent No. 6,325,414 ("the '414 patent") issued on December 4, 2001, from application serial no. 09/737,138, filed December 14, 2000. The application from which the '414 patent issued was a continuation of the application that issued as the '387 patent.

52.     The '414 patent is related to the '387 patent. The '414 patent issued from a continuation application and claims priority to the application that issued as the '387 patent. The inequitable conduct committed in connection with the '387 patent is also pertinent and related to the claims of the '414 patent. As such, the claims of the '414 patent are likewise unenforceable because of the inequitable conduct committed in

19

connection with the prosecution of the '387 patent.

**United States Patent Nos. 6,484,080:**

53.     United States Patent No. 6,484,080 ('the '080 patent) issued on November 19, 2002, from application serial no. 09/753,186, filed January 2, 2001.

54.     ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, knew of several material prior art references during the prosecution of the '080 patent, yet they deliberately concealed this prior art from the PTO.

55.     One such material prior art reference is U.S. Patent No. 5,602,734 to Kithil. ATI and others substantive involved in the prosecution of the '080 patent were aware of this prior art reference during the prosecution of another ATI patent application, which later issued as the '978 patent in suit.

56.     Another material prior art reference that was withheld from the PTO is U.S. Patent No. 5,573,269 to Gentry. ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, were aware of the Gentry reference by at least March 22, 1998, when Gentry was cited in another ATI patent application, which later issued as the '701 patent in suit.

57.     Other material prior art references deliberately concealed from the PTO are U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et al.; U.S Patent No. 5,714,695 to Bruns; U.S. Patent No. 6,039,344 to Mehney; and U.S. Patent No. 6,069,325 (and counterpart EP 0950560 published October 1999). ATI and others substantively involved in the prosecution of the '080 patent were aware of these references prior to the issue date of the '080 patent.

58.     The foregoing references and information are not cumulative to the prior

20

art and information of record during the prosecution of the '080 patent.

59.    The foregoing references and information were material to the examination of the '080 patent.

60.    The failure to disclose the foregoing references and information during the prosecution of the '080 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe.

61.    For at least the foregoing reasons, the claims of the '080 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent 6,850,824**:

62.    United States Patent No. 6,850,824 ("the '824 patent) issued February 1, 2005, from application serial no. 10/613,453, filed July 3, 2003.

63.    The '824 patent is related to the '080 patent.  The '824 patent issued from a continuation-in-part application of, and claims priority to, the application that issued as the '080 patent.  The inequitable conduct committed in connection with the '080 patent is also pertinent and related to the claims of the '824 patent.  As such, the claims of the '824 patent are likewise unenforceable because of the inequitable conduct committed during the prosecution of the '080 patent.

**U.S. Patent No. 6,397,136:**

64.    U.S. Patent No. 6,397,136 ("the '136 patent") issued on May 28, 2002, from application serial no. 09/474,147, filed December 29, 1999.

65.    ATI and other substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of at least several material prior art references during the prosecution of the '136 patent but deliberately concealed this

21

material prior art from the PTO.

66.     One of these prior art references concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

67.     Another material prior reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '136 patent.

68.     Another material prior art reference concealed from the PTO is U.S. Patent No. 5,528,698 to Kamei et al.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least July 13, 1998, when it was cited by the PTO in another ATI patent application, which later issued as the '978 patent in suit.

69.     U.S. Patent No. 5,525,843 to Howing is another material prior art reference concealed by ATI.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least April 2, 2002, when ATI cited Howing in an IDS during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,942,248.

70.     WO94-22693, which is a PCT application assigned to ATI and published by at least October 13, 1994, was also concealed from the PTO.

71.     SAE Technical Paper 951051 titled "Occupant Sensing Utilizing Perturbation of Electric Fields", by Jinno et al. was also concealed from the PTO.  This

paper was published by at least February 1997. ATI and those substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least May 20, 2002, when this reference was cited in an IDS during prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

72.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '136 patent.

73.     The foregoing references and information were material to the examination of the '136 patent.

74.     The failure to disclose the foregoing references and information during the prosecution of the '136 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

75.     For at least the foregoing reasons, the claims of the '136 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,422,595:**

76.     United States Patent No. 6,422,595 ("the '595 patent") issued on July 23, 2002, from application serial no. 09/639,299, filed August 15, 2000.

77.     ATI and others substantively involved in the prosecution of the '595 patent were aware of various material prior art references, yet failed to disclose this information to the PTO during prosecution of the '595 patent.

78.     One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named

23

inventors on the '595 patent.

79.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

80.    Another material prior art reference that was concealed is U.S. Patent No. 5,482,314 to Corrado et al. ATI and others substantively involved in the prosecution of the '595 patent were aware of Corrado by at least November 18, 1996, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

81.    Also concealed from the PTO was WO97/04984, which published by at least February 13, 1997. Upon information and belief, ATI and others substantively involved in the prosecution of the '595 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

82.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '595 patent.

83.    The foregoing references and information were material to the examination of the '595 patent.

84.    The failure to disclose the foregoing references and information during the prosecution of the '595 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

24

85.    For at least the foregoing reasons, the claims of the '595 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 5,901,978**:

86.    United States Patent No. 5,901,978 ("the '978 patent) issued on May 11, 1999, from application serial no. 09/084,641, filed May 26, 1998.

87.    ATI and others substantively involved in the prosecution of the '978 patent were aware of material prior art references but failed to disclose these references to the PTO during prosecution of the '978 patent.

88.    One such reference is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '978 patent.

89.    Another material prior art reference that was concealed is U.S. Patent No. 5,785,347 to Adolph. ATI and others substantively involved in the prosecution of the '978 patent were aware of Adolph by at least March 22, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '701 patent in suit.

90.    Another material prior art reference that was concealed is U.S. Patent No. 5,702,123 to Takahashi. ATI and others substantively involved in the prosecution of the '978 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the application that issued as the '701 patent in suit.

91.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '978 patent.

92.    The foregoing references and information were material to the examination of the '978 patent.

25

93.    The failure to disclose the foregoing references and information during the prosecution of the '978 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '978 patent, including David Breed and Brian Roffe.

94.    For at least the foregoing reasons, the claims of the '978 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,942,248:**

95.    United States Patent No. 6,942,248 ("the '248 patent") issued on September 13, 2005, from application serial no. 10/114,533, filed April 2, 2002.

96.    ATI and others substantively involved in the prosecution of the '248 patent were aware of several material prior art references but concealed this prior art from the PTO.

97.    One such reference is GB 2 289 332, which was published by at least November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '248 patent.

98.    Another material prior art reference that was concealed is WO95/18028, which was published by at least July 6, 1995. ATI and others substantively involved in the prosecution of the '248 patent were aware of this reference by at least February 12, 2001, when its counterpart, U.S. Patent No. 5,782,485, was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,529,809.

99.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,702,123 to Takahashi. ATI and others substantively involved in the prosecution of the

26

'248 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the '701 patent in suit.

100.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '248 patent.

101.    The foregoing references and information were material to the examination of the '248 patent.

102.    The failure to disclose the foregoing references and information during the prosecution of the '248 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '248 patent, including David Breed and Brian Roffe.

103.    For at least the foregoing reasons, the claims of the '248 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,757,602:**

104.    United States Patent No. 6,757,602 ("the '602 patent) issued on June 29. 2004. from application serial no. 10/234,436, filed September 2, 2002.

105.    ATI and others substantively involved in the prosecution of the '602 patent failed to disclose a variety of material prior art references and information.

106.    For example, ATI knew of a publication titled "Occupant Sensing Utilizing Pertubation of Electric Fields", SAE Paper No. 951051, by Jinno et al.  The Jinno paper was published by at least February 24, 1997.  ATI and others substantively involved in the prosecution of the '602 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

107.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,474,327 to Schousek.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Schousek by at least May 26, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '978 patent in suit.

108.    Another material reference that was concealed form the PTO is U.S. Patent No. 5,732,375 to Cashler.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Cashler by at least September 3, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as the '100 patent in suit.

109.    Also concealed was U.S. Patent No. 6,252,240 to Gillis et al.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Gillis by at least January 4, 2002, when it was cited in an Office Action during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,474,683.

110.    Another material prior art reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '602 patent.

111.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

112.    U.S Patent No. 5,906,393 to Mazur was also concealed from the PTO.  ATI and others substantively involved in the prosecution of the '602 patent were aware of

28

Mazur by at least June 12, 2000, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 6,168,198.

113.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '602 patent.

114.    The foregoing references and information were material to the examination of the '602 patent.

115.    The failure to disclose the foregoing references and information during the prosecution of the '602 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '602 patent, including David Breed and Brian Roffe.

116.    For at least the foregoing reasons, the claims of the '602 patent are unenforceable by reason of inequitable conduct.

117.    Each of the foregoing activities not only renders one or more of the ATI Patents unenforceable for inequitable conduct, but also any patent that issues from an application that claims priority to or is otherwise related to any application in which inequitable conduct was committed is likewise tainted and unenforceable.

## EXCEPTIONAL CASE

ATI's attempt to read the claims of the ATI Patents on the activities and products of Honda and ATI's inequitable conduct make this case exceptional under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Honda prays for a judgment:

a)  dismissing ATI's First Amended Complaint with prejudice;

b)  declaring that Honda has not infringed any claim of the ATI Patents and the '022

29

Patent;

c) declaring that the ATI patents and the '022 Patent are invalid;

d) declaring that the ATI Patents and the '022 Patent are unenforceable due to inequitable conduct;

e) adjudging this case to be an exceptional case pursuant to 35 U.S.C. § 285, and awarding Honda its costs and attorneys' fees; and

f) granting such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE
455 N. Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, IL 60611-5599
(312) 321-4200

February 16, 2007

_____
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
tcgefiling@mnat.com
bschladweiler@mnat.com
Attorneys for American Honda Motor Co., Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007, upon the following individuals in the manner indicated:

### BY HAND

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE  19801

### BY EMAIL

> Andrew Kochanowski, Esquire
> SOMMERS SCHWARTZ, P.C.
> 2000 Town Center, Suite 900
> Southfield, MI  48075
> Email: Akochanowski@sommerspc.com

> Michael H. Baniak, Esquire
> MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
> 300 South Wacker Drive
> Chicago, IL  60606
> Email: baniak@mbhb.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HONDA MOTOR CO., INC., ELESYS NORTH AMERICA, INC., and GENERAL MOTORS CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 06-187-GMS |

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF
## ELESYS NORTH AMERICAN, INC.

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant Elesys North American, Inc. ("ENA") answers the First Amended Complaint of Automotive Technologies International, Inc. ("ATI") as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Automotive Technologies International, Inc. ("ATI") is a Delaware corporation.

## ANSWER:

Admitted.

2.     Defendant American Honda Motor Company ("Honda") is a California corporation. Defendant Honda imports and sells in the United States automobiles manufactured in Japan and the United States under the "Honda" and "Acura" names.

**ANSWER**:

ENA is without knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 2, and therefore denies these allegations.

3.    Defendant Elesys North America, Inc. ("Elesys") is a Georgia corporation. Elesys is a supplier of products to the automotive industry.

**ANSWER:**

ENA admits that it is a Georgia corporation.  ENA admits that it is a supplier of specific products to certain companies in the automotive industry.  ENA denies the remaining allegations of paragraph 3.

4.    Defendant General Motors Corporation ("GM") is a Delaware corporation. GM sells vehicles in the United States under the "Buick," "Pontiac," and "Saturn" names, among others.

**ANSWER:**

ENA is without knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 4, and therefore denies these allegations.

5.    This is an action for patent infringement.  All of the acts of patent infringement complained of in this Complaint occurred, among other places, within this judicial district.

**ANSWER**:

ENA admits that this purports to be an action for alleged patent infringement.  ENA denies the remaining allegations of paragraph 5.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331 over this infringement action, arising under the Patent Act, 35 U.S.C. § 1 et seq., including §§ 271 and 281-285.

**ANSWER:**

Admitted.

2

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), (c) and 28 U.S.C. § 1400(b).  The Court has personal jurisdiction over each of the parties.

**ANSWER:**

Admitted.  Pursuant to 28 U.S.C. § 1404(a), however, venue is most proper in the United

States District Court for the Eastern District of Michigan.

**GENERAL ALLEGATIONS**

8.      The following patents have been issued duly and legally to Plaintiff ATI on the following dates:

a.      U.S. Patent No. 5,901,978 entitled "Method and Apparatus for Detecting the Presence of a Child Seat," issued May 11, 1999. (Exhibit 1)

b.      U.S. Patent No. 6,242,701 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued June 5, 2001. (Exhibit 2)

c.      U.S. Patent No. 6,325,414 entitled "Method and Arrangement for Controlling Deployment of a Side Airbag," issued December 4,    2001. (Exhibit 3)

d.      U.S. Patent No. 6,397,136 entitled "System for Determining the Occupancy State of a Seat in a Vehicle," issued May 28, 2002. (Exhibit 4)

e.      U.S. Patent No. 6,422,595 entitled "Occupant Position Sensor and Method and Arrangement for Controlling a Vehicular Component  Based on an Occupant's Position," issued July 23, 2002. (Exhibit 5)

f.      U.S. Patent No. 6,869,100 entitled "Method and Apparatus for Controlling an Airbag," issued March 22, 2005. (Exhibit 6)

g.      U.S. Patent No. 6,757,602 entitled "System For Determining the Occupancy State of a Seat in a Vehicle and Controlling a Component Based Thereon," issued June 29, 2004. (Exhibit 7)

h.      U.S. Patent No. 6,712,387 entitled "Method and Apparatus for Controlling Deployment of a Side Airbag," issued March 30, 2004. (Exhibit 8)

i.      U.S. Patent No. 6,942,248 entitled "Occupant Restraint Device Control System and Method," issued September 13, 2005. (Exhibit 9)

> j.  U.S. Patent No. 6,958,451 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued October 25, 2005. (Exhibit 10)
>
> k.  U.S. Patent No. 6,484,080 entitled "Method and Apparatus for Controlling a Vehicular Component," issued November 19, 2002. (Exhibit 11)
>
> l.  U.S. Patent No. 6,850,824 entitled "Method and Apparatus for Controlling a Vehicular Component," issued February 1, 2005. (Exhibit 12)

**ANSWER**:

ENA admits that U.S. Patent Nos. 5,901,978, 6,242,701, 6,325,414, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,712,387, 6,942,248, 6,958,451, 6,484,080 and 6,850,824 ("the ATI Patents") are attached to the Plaintiff's First Amended Complaint as Exhibits 1-12, respectively. ENA admits that ATI is the listed assignee on the face of the ATI Patents. ENA admits that the ATI Patents have titles of inventions and the issue dates identified in paragraph 8, a-l. ENA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and on that basis, denies these allegations.

**PATENT INFRINGEMENT**

9.  All of the patents set forth in paragraph 8, a-l (collectively, "the ATI Patents"), are valid, subsisting, enforceable, and are presently owned by ATI and have been owned by ATI for all times relevant hereto.

**ANSWER:**

ENA denies that all of the patents set forth in paragraph 8, a-l, are valid. ENA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9, and therefore denies these allegations.

10.  The general subjects covered by the ATI Patents include, but are not limited to occupant sensing, position sensing, weight sensing, airbag deployment, and related systems as used in a vehicle containing airbags.

4

**ANSWER:**

ENA admits that some of the subjects identified in paragraph 10 are addressed in some of the ATI Patents.  ENA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 10, and therefore denies these allegations.

11.    Among the products made, sold, used, or imported by Elesys are the following:
   a.    "Passenger Sensing System";
   b.    "Seat Sentry System";
   c.    "Occupant Detection System"; and
   d.    "Low Risk Deployment System".

**ANSWER:**

ENA admits that ENA made and sold the electronic control units ("ECUs") and sensor assemblies for the Passenger Sensing System and has imported and sold the ECUs that are used in the Occupant Detection System.  The Passenger Sensing System was previously referred to as the Seat Sentry System.  ENA admits that ENA has made the Low Risk Deployment System.  ENA denies the remaining allegations in paragraph 11.

12.    Elesys sells some or all of the above systems, either singularly or in combination, to Defendants Honda and GM.  Upon information and belief, Elesys has supplied Honda since approximately 2001.  Upon information and belief, Elesys has supplied GM since 2004.  Elesys has recently announced the intention to supply the product systems, or some of them, to approximately 1.1 million additional GM vehicles.

**ANSWER:**

ENA admits that it has sold to GM on a commercial scale the ECUs and the sensor assemblies for the Passenger Sensing System since 2004.  ENA admits that it has sold to Honda, through third-parties, the ECUs that are used in the Occupant Detection System since 2005.  ENA denies the remaining allegations in paragraph 12.

13.    All of the product systems referenced above infringe, directly or by contributory infringement, the ATI Patents.  None of the Defendants has any right or license from ATI under the ATI Patents.

**ANSWER:**

ENA is aware of a license between ATI and NEC but ATI has failed to produce it in the litigation.  Until it has an opportunity to consider it, ENA is without information or knowledge sufficient to form a belief as to the truth of the whether it has a license ~~admits that ENA has no license from ATI~~ under the ATI Patents and therefore denies this allegation.  ENA also denies the remaining allegations in paragraph 13.

14.    Defendant Honda makes, uses, imports and/or sells vehicles with an occupant position detection system called Occupant Position Detection System ("OPDS") in various model Hondas and Acuras sold in the United States.  The OPDS system may vary slightly from model to model, but on information and belief, contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry and/or the Low Risk Deployment System (since 2006).  Certain portions of the OPDS system are supplied by other automotive suppliers.  Among the variations of the OPDS system used in Honda and Acura vehicles is a system employing a strain gage weight sensor and/or seat belt sensors.  The OPDS system comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s).  Upon information and belief, the OPDS system has been used in the following models:

| Year | Model |
|------|-------|
| 2002 | Honda Accord |
| 2003 | Honda Accord |
| 2003 | Honda Civic Hybrid |
| 2004 | Honda Accord |
| 2005 | Honda Odyssey |
| 2005 | Honda Pilot |
| 2005 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2005 | Honda Accord |
| 2005 | Honda Element |
| 2006 | Honda Element |
| 2006 | Honda Accord |
| 2006 | Honda CRV |
| 2006 | Honda Ridgeline |
| 2006 | Honda Civic |

6

| 2006 | Honda Accord Hybrid |

| Year | Model |
| --- | --- |
| 2001 | Acura MDX |
| 2002 | Acura MDX |
| 2002 | Acura 3.2 CL |
| 2003 | Acura TL |
| 2003 | Acura MDX |
| 2004 | Acura TL |
| 2004 | Acura MDX |
| 2005 | Acura TL |
| 2005 | Acura MDX |
| 2006 | Acura TSX |
| 2006 | Acura TL |
| 2006 | Acura RL |
| 2006 | Acura MDX |

**ANSWER:**

ENA admits that it has sold to Honda, through third parties, ECUs that are used in the Occupant Position Detection System ("OPDS"). ENA denies that the OPDS contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry System and/or the Low Risk Deployment System. ENA is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 14, and therefore denies these allegations.

15.    Upon information and belief, additional Honda and Acura models to those listed in paragraph 14 have been equipped with the OPDS system, and continue to be sold in the United States with the OPDS system.

**ANSWER:**

ENA is without information or knowledge sufficient to form a belief as to the truth of allegations in paragraph 15, and therefore denies these allegations.

16.    Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents.

**ANSWER:**

7

ENA denies that any product made, sold, offered for sale or used by ENA infringes the

ATI Patents.  ENA is without information or knowledge sufficient to form a belief as to the truth

of the remaining allegations in paragraph 16, and therefore denies these allegations.

17.     Defendant Honda markets and sells these models to the public.  Defendant will
continue to do so unless enjoined by this Court.

**ANSWER:**

ENA is without information or knowledge sufficient to form a belief as to the truth of

allegations in paragraph 17, and therefore denies these allegations.

18.     Defendant GM makes, uses, and sells vehicles which employ some or all of the
Elesys product systems set forth above in paragraph 11, called in some instance, the Passenger
Presence System.  Certain GM vehicles use the Elesys systems in conjunction with seatbelt
sensors.  The Elesys system in GM vehicles comprises and controls, or works in conjunction
with a controller for, among other things, suppressing or allowing the deployment of side airbags
and side curtain airbags in a vehicle equipped with the system(s).   Upon information and belief
the Elesys systems are supplied in the following GM vehicles:

| Year | Model |
|------|-------|
| 2005 | Pontiac G6 |
| 2006 | Pontiac G6 |
| 2005 | Pontiac Grand Prix |
| 2006 | Pontiac Grand Prix |
| 2005 | Saturn Ion |
| 2006 | Saturn Ion |
| 2005 | Saturn Vue |
| 2006 | Saturn Vue |
| 2005 | Buick LaCrosse |
| 2006 | Buick LaCrosse |

**ANSWER:**

ENA admits that it has sold to GM the ECUs and the sensor assemblies for the Passenger

Sensing System.  ENA is without information or knowledge sufficient to form a belief as to the

truth of the remaining allegations in paragraph 18, and therefore denies these allegations.

8

19.    Upon information and belief, GM makes and sells other models than those listed in Paragraph 17 [sic, 18] with the Passenger Presence System or other-named system using Elesys products.  Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents set forth in paragraph 8, with the exception of the '387, '451, '414, and '701 Patents.  Defendant GM markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

ENA denies that any product made, sold, offered for sale or used by ENA infringes the

ATI Patents.  ENA is without information or knowledge sufficient to form a belief as to the truth

of the remaining allegations in paragraph 19, and therefore denies these allegations.


20.    At least as early as February, 2004, ATI advised Elesys of the existence of various of the above-listed patents and sought to discuss the license of the ATI Patents to Elesys.  Elesys was formed as a joint venture between Defendant Honda and a third-party, NEC, Inc., another automotive supplier.  Upon information and belief, as of February, 2004, Honda had knowledge of various of the ATI patents at issue in this case.  Additionally, certain of the patents at issue in this action have been actually known to NEC and Honda, Japan, earlier than February, 2004.

**ANSWER:**

ENA admits that in or about February 2004, ATI advised ENA of the existence of various

patents and published patent applications allegedly owned by ATI and sought to discuss

licensing of these patents to ENA.  The patents that ATI advised ENA of included the '978, the

'414, the '136, and the '595 patents.  The published patent applications that ATI advised ENA of

included US 2003/0001368 (which later matured into the '100 patent), US 2003/0002690 (which

later matured into the '022), and US2003/0056997 (which later matured into the '451 patent).

ENA denies that ENA was formed as a joint venture between Honda and NEC, Inc.  ENA is

wholly owned by Honda elesys Co., Ltd., which is a joint venture between Honda Motor Co.,

Ltd. and NEC, Inc.  ENA is without information or knowledge sufficient to form a belief as to

the truth of the remaining allegations in paragraph 20, and therefore denies the allegations.

21.    In addition to the above, beginning in October, 2005, ATI placed Honda on notice of certain patents at issue in this lawsuit via written communications with Koichi Kondo, William R. Willen, of Honda, and Takeo Oi, Intellectual Property Division of Honda Motor Company, Ltd. in Japan.  As a result, Honda has known of certain if not all of the patents at issue in this case prior to this Complaint.

**ANSWER:**

ENA is without information or knowledge sufficient to form a belief as to the truth of allegations in paragraph 21, and therefore denies these allegations.

## AFFIRMATIVE DEFENSES

Further responding to ATI's First Amended Complaint, ENA asserts the following affirmative defenses and reserves the right to amend its Answer as additional information becomes available:

1.    ATI's claims are barred by laches and estoppel.

2.    ENA incorporates by reference as affirmative defenses the allegations set forth below supporting its Counterclaims.

## COUNTERCLAIMS

For its Counterclaims against ATI, ENA states as follows:

1.    This Court has jurisdiction over these Counterclaims pursuant to Rule 13, Fed. R. Civ. P.  Jurisdiction in this Court also is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper for these Counterclaims because ATI elected this forum for suit and pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Pursuant to 28 U.S.C. § 1404(a), venue is also proper in the United States District Court for the Eastern District of Michigan.

2.    An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of the ATI Patents.

10

3.    An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of U.S. Patent No. 6,950,022 ("the '022 Patent").  ATI asserted the infringement the '022 Patent in the Complaint based on ENA's supply to Honda and GM and removed the assertions based on the '022 Patent in the First Amended Complaint.

4.    An actual controversy exists between the parties based on ENA's supply to GM as to the asserted infringement of U.S. Patent Nos. 6,712,387 ("the '387 Patent"), 6,958,451 ("the '451 Patent"), 6,325,414 ("the '414 Patent"), and 6,242,701 ("the '701 Patent").  ATI asserted that ENA's supply to GM infringes the'387, '451, '414, and '701 Patents in the Complaint.  ATI removed these assertions in the First Amended Complaint.

### FIRST COUNTERCLAIM

### DECLARATION OF NONINFRINGEMENT OF THE ATI PATENTS

5.    3.    ENA repeats and realleges the allegations of paragraphs 1, 2 and 4 of these Counterclaims.

6.    4.    ENA has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the ATI Patents.

7.    5.    ENA has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the '387, '451, '414, or the '701 Patents by ENA's supply to GM.

### SECOND COUNTERCLAIM

### DECLARATION OF INVALIDITY OF THE ATI PATENTS

8.    6.    ENA repeats and realleges the allegations of paragraphs 1, 2 and 4 of these Counterclaims.

11

9. ~~7.~~    The ATI Patents are invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

### THIRD COUNTERCLAIM

### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 6,950,022

10. ~~8.~~    ENA repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

11. ~~9.~~    ENA has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the '022 Patent.

### FOURTH COUNTERCLAIM

### DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,950,022

12. ~~10.~~    ENA repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

13. ~~11.~~    The '022 Patent is invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

### FIFTH COUNTERCLAIM

### DECLARATION OF UNENFORCEABLITY OF ATI PATENTS

14.    During the prosecution of the ATI Patents (For purposes of the Fifth Counterclaim all references to "the ATI Patents" includes the '022 Patent), ATI and others substantively involved in the prosecution of the ATI Patents deliberately engaged in a pattern of conduct that was misleading and calculated to mislead the United States Patent Office ("the PTO") into granting ATI patent coverage to which ATI was and is not entitled.

15.    Those involved in this scheme included at least the following individuals at ATI, all of whom were substantively involved in the prosecution of the ATI Patents, Brian Roffe,

12

Samuel Shipkovitz, Karl Milde, David Breed, Wilbur Duvall, Wendell Johnson, and Ray Piirainen.

16.    ATI and others substantively involved in the prosecution of the ATI Patents filed numerous patent applications directed to subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the ATI Patents.

17.    In addition, ATI and those substantively involved in the prosecution of the ATI Patents deliberately concealed from the PTO material prior art and other material information or, in the alternative, in those instances when material prior art was disclosed to the PTO, it was buried in a mountain of immaterial prior art in an effort by ATI to mislead the PTO into overlooking the most material information.

18.    Another tactic employed by ATI and others substantively involved in the prosecution of the ATI Patents was the practice of filing numerous "continuation" and "continuation in part" applications claiming priority to earlier filed ATI applications.  This practice of filing numerous continuation applications was intended to pre-date the prior art activities of others that would have otherwise barred ATI from obtaining patent coverage.  ATI knew or should have known that many of its priority claims were without merit.  Worse yet, ATI's numerous patent filings were designed to be so convoluted that the examiners assigned to examine ATI's various patent applications could not meaningfully review and challenge ATI's priority claims.

19.    In addition, several of the ATI Patents claim (or did claim) priority through a convoluted chain of applications reaching back to patent application serial no. 07/878,571, filed May 5, 1992.  These ATI Patents include at least U.S. Patent Nos. 6,422,595; 6,712,387;

6,325,414; 6,869,100; 6,942,248; and 6,950,022.  However, these patents were not entitled to claim priority to application serial no. 07/878,571 because of a lack of co-pendency.  Application serial no. 07/878,571 was abandoned on March 23, 1993.  The next application in the chain of priority, application serial no. 08/040,978, was not filed until some eight days later, on March 31, 1993.  Upon information and belief, one or more persons substantively involved in the prosecution of the ATI Patents were aware of the lack of co-pendency yet ATI nonetheless claimed priority to application serial no. 07/878,571.  Moreover, in an effort to cure this lack of co-pendency, ATI and others substantively involved in the prosecution of the ATI Patents, including David Breed and Brain Roffe, were not candid in connection with the Petitions filed under 37 C.F.R. §1.137(b) and the accompanying "Declaration of Facts".  The lack of candor related to the explanation provided by ATI for the lengthy delay between the date that application serial no. 07/878,571 was abandoned (e.g., March 23, 1993) and the filing of the aforementioned petitions, the first of which was filed on August 15, 2001.  Based upon this lack of candor, the PTO was misled into granting ATI's petition.

20.     The foregoing activities were material and intended by ATI and others substantively involved in the prosecution of the ATI Patents to mislead the PTO.  As a result, the ATI Patents are unenforceable by reason of inequitable conduct.

21.     In addition, ATI and others substantively involved in the prosecution of the various ATI Patents committed additional acts of inequitable conduct, which, standing alone, render the below identified patents unenforceable.

**U.S. Patent 6,242,701:**

22.     United States Patent No. 6,242,701 ("the '701 patent") issued on June 5, 2001, from application serial no. 09/193,209, filed November 17, 1998.

23.    ATI failed to disclose several material prior art references during the prosecution of the application that issued as the '701 patent.  These references include at least U.S. Patent No. 5,942,695 to Verma ("Verma"); U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et. al. (collectively referred to as "Gagnon").

24.    ATI and other substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Verma by at least May 4, 2001.  On that date, Verma was cited in an Information Disclosure Statement ("IDS") in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

25.    Upon information and belief, ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Gagnon during the prosecution of the application that issued as the '701 patent.

26.    Verma and Gagnon are prior art to one or more claims of the '701 patent.

27.    Neither Verma nor Gagnon is cumulative to the prior art of record during the prosecution of the '701 patent.

28.    Verma and Gagnon were material to the prosecution of the '701 patent.

29.    The failure to disclose Verma and Gagnon was motivated by an intent to deceive on the part of ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe.

30.    The claims of the '701 patent therefore, are unenforceable by reason of the inequitable conduct committed by ATI and others substantively involved in the prosecution of the '701 patent.

**United States Patent No. 6,958,451:**

31.    United States Patent No. 6,958,451 ("the '451 patent) issued on October 25, 2005, from application serial no. 10/174,803, filed June 19, 2002.

32.     The '451 patent is related to the '701 patent.  The '451 patent issued from a chain of continuation-in-part applications and claims priority to the application that issued as the '701 patent.  The inequitable conduct committed in connection with the '701 patent is also pertinent and related to the claims of the '451 patent.  As such, the claims of the '451 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '701 patent.

33.     Furthermore, ATI and others substantively involved in the prosecution of the '451 patent engaged in further acts of commission and omission during the prosecution of the '451 patent that, standing alone, also render the claims of the '451 patent unenforceable.

34.     ATI and others substantively involved in the prosecution of the '451 patent were aware of various material prior art references during the prosecution of the '451 patent, but failed to disclose this material prior art to the PTO.

35.     One such material prior art reference deliberately concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

36.     Another material prior art reference deliberately concealed from the PTO is ATI's PCT patent application WO94-22693, which was published by at least October 13, 1994.

37.     Another material prior art reference deliberately concealed is U.S. Patent No. 5,482,314 to Corrado.  ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, were aware of Corrado by at least November 18, 1996, when it was cited by the PTO in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

38.     U.S. Patent Nos. 5,810,382 and 5,865,463 to Gagnon et al. are additional material prior art references that ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, failed to disclose to the PTO. ATI and others involved in the prosecution of the '451 patent were aware of the Gagnon patents by at least June 25, 2002, when the Gagnon '463 patent was cited in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

39.     Another prior reference that was concealed from the PTO is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '451 patent.

40.     ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe, also failed to disclose material information regarding a litigation involving a related ATI patent, U.S. Patent No. 6,442,504.  In that litigation, pursuant to an Order dated September 29, 2004, certain claims of the '504 patent, including claim 1, were held invalid over U.S. Patent Nos. 4,957,286 and 6,101,436.  Claim 1 of the '504 patent is similar to at least claims 4, 24, and 34 of the '451 patent.  Yet, ATI and others substantively involved in the prosecution failed to disclose to the PTO the existence of the litigation involving the '504 patent, the holding of invalidity of similar claims or the prior art references that were the basis for the invalidity holding.

41.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '451 patent.

42.     The foregoing references and information are material to the examination of the '451 patent.

43.    The failure to disclose the foregoing references and information during the prosecution of the '451 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe.

44.    For at least the foregoing reasons, the claims of the '451 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent Nos. 6,712,387:**

45.    United States Patent No. 6,712,387 ("the '387 patent") issued on March 30, 2004, from application serial no. 09/437,535, filed November 10, 1999.

46.    ATI and others substantively involved in the prosecution of the '387 patent were aware of material prior art but deliberately concealed that prior art from the PTO.

47.    One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '387 patent.

48.    Another material prior art reference deliberately concealed from the PTO is an SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

49.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '387 patent.

50.    The foregoing references and information are material to the examination of the '387 patent.

51.    The failure to disclose the foregoing references and information during the prosecution of the '387 patent was motivated by an intent to deceive the PTO on the part of ATI

and others substantively involved in the prosecution of the '387 patent, including David Breed and Brian Roffe.

52.    For at least the foregoing reasons, the claims of the '387 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent No. 6,325,414:**

53.    United States Patent No. 6,325,414 ("the '414 patent") issued on December 4, 2001, from application serial no. 09/737,138, filed December 14, 2000. The application from which the '414 patent issued was a continuation of the application that issued as the '387 patent.

54.    The '414 patent is related to the '387 patent. The '414 patent issued from a continuation application and claims priority to the application that issued as the '387 patent. The inequitable conduct committed in connection with the '387 patent is also pertinent and related to the claims of the '414 patent. As such, the claims of the '414 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '387 patent.

**United States Patent Nos. 6,484,080:**

55.    United States Patent No. 6,484,080 ('the '080 patent) issued on November 19, 2002, from application serial no. 09/753,186, filed January 2, 2001.

56.    ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, knew of several material prior art references during the prosecution of the '080 patent, yet they deliberately concealed this prior art from the PTO.

57.    One such material prior art reference is U.S. Patent No. 5,602,734 to Kithil. ATI and others substantive involved in the prosecution of the '080 patent were aware of this prior art reference during the prosecution of another ATI patent application, which later issued as the '978 patent in suit.

19

58.    Another material prior art reference that was withheld from the PTO is U.S. Patent No. 5,573,269 to Gentry.  ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, were aware of the Gentry reference by at least March 22, 1998, when Gentry was cited in another ATI patent application, which later issued as the '701 patent in suit.

59.    Other material prior art references deliberately concealed from the PTO are U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et al.; U.S Patent No. 5,714,695 to Bruns; U.S. Patent No. 6,039,344 to Mehney; and U.S. Patent No. 6,069,325 (and counterpart EP 0950560 published October 1999).  ATI and others substantively involved in the prosecution of the '080 patent were aware of these references prior to the issue date of the '080 patent.

60.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '080 patent.

61.    The foregoing references and information were material to the examination of the '080 patent.

62.    The failure to disclose the foregoing references and information during the prosecution of the '080 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe.

63.    For at least the foregoing reasons, the claims of the '080 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent 6,850,824:**

64.    United States Patent No. 6,850,824 ("the '824 patent) issued February 1, 2005, from application serial no. 10/613,453, filed July 3, 2003.

65.    The '824 patent is related to the '080 patent.  The '824 patent issued from a continuation-in-part application of, and claims priority to, the application that issued as the '080 patent.  The inequitable conduct committed in connection with the '080 patent is also pertinent and related to the claims of the '824 patent.  As such, the claims of the '824 patent are likewise unenforceable because of the inequitable conduct committed during the prosecution of the '080 patent.

**U.S. Patent No. 6,397,136:**

66.    U.S. Patent No. 6,397,136 ("the '136 patent") issued on May 28, 2002, from application serial no. 09/474,147, filed December 29, 1999.

67.    ATI and other substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of at least several material prior art references during the prosecution of the '136 patent but deliberately concealed this material prior art from the PTO.

68.    One of these prior art references concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

69.    Another material prior reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '136 patent.

70.    Another material prior art reference concealed from the PTO is U.S. Patent No. 5,528,698 to Kamei et al.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least July 13,

1998, when it was cited by the PTO in another ATI patent application, which later issued as the '978 patent in suit.

71.    U.S. Patent No. 5,525,843 to Howing is another material prior art reference concealed by ATI. ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least April 2, 2002, when ATI cited Howing in an IDS during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,942,248.

72.    WO94-22693, which is a PCT application assigned to ATI and published by at least October 13, 1994, was also concealed from the PTO.

73.    SAE Technical Paper 951051 titled "Occupant Sensing Utilizing Perturbation of Electric Fields", by Jinno et al. was also concealed from the PTO. This paper was published by at least February 1997. ATI and those substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least May 20, 2002, when this reference was cited in an IDS during prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

74.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '136 patent.

75.    The foregoing references and information were material to the examination of the '136 patent.

76.    The failure to disclose the foregoing references and information during the prosecution of the '136 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

77.    For at least the foregoing reasons, the claims of the '136 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,422,595:**

78.    United States Patent No. 6,422,595 ("the '595 patent") issued on July 23, 2002, from application serial no. 09/639,299, filed August 15, 2000.

79.    ATI and others substantively involved in the prosecution of the '595 patent were aware of various material prior art references, yet failed to disclose this information to the PTO during prosecution of the '595 patent.

80.    One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '595 patent.

81.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

82.    Another material prior art reference that was concealed is U.S. Patent No. 5,482,314 to Corrado et al.  ATI and others substantively involved in the prosecution of the '595 patent were aware of Corrado by at least November 18, 1996, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

83.    Also concealed from the PTO was WO97/04984, which published by at least February 13, 1997.  Upon information and belief, ATI and others substantively involved in the prosecution of the '595 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

84. The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '595 patent.

85. The foregoing references and information were material to the examination of the '595 patent.

86. The failure to disclose the foregoing references and information during the prosecution of the '595 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

87. For at least the foregoing reasons, the claims of the '595 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 5,901,978**:

88. United States Patent No. 5,901,978 ("the '978 patent) issued on May 11, 1999, from application serial no. 09/084,641, filed May 26, 1998.

89. ATI and others substantively involved in the prosecution of the '978 patent were aware of material prior art references but failed to disclose these references to the PTO during prosecution of the '978 patent.

90. One such reference is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '978 patent.

91. Another material prior art reference that was concealed is U.S. Patent No. 5,785,347 to Adolph. ATI and others substantively involved in the prosecution of the '978 patent were aware of Adolph by at least March 22, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '701 patent in suit.

92.    Another material prior art reference that was concealed is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '978 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the application that issued as the '701 patent in suit.

93.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '978 patent.

94.    The foregoing references and information were material to the examination of the '978 patent.

95.    The failure to disclose the foregoing references and information during the prosecution of the '978 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '978 patent, including David Breed and Brian Roffe.

96.    For at least the foregoing reasons, the claims of the '978 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,942,248:**

97.    United States Patent No. 6,942,248 ("the '248 patent") issued on September 13, 2005, from application serial no. 10/114,533, filed April 2, 2002.

98.    ATI and others substantively involved in the prosecution of the '248 patent were aware of several material prior art references but concealed this prior art from the PTO.

99.    One such reference is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '248 patent.

100.    Another material prior art reference that was concealed is WO95/18028, which was published by at least July 6, 1995.  ATI and others substantively involved in the prosecution

of the '248 patent were aware of this reference by at least February 12, 2001, when its counterpart, U.S. Patent No. 5,782,485, was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,529,809.

101.   Another material prior art reference concealed by ATI is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '248 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the '701 patent in suit.

102.   The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '248 patent.

103.   The foregoing references and information were material to the examination of the '248 patent.

104.   The failure to disclose the foregoing references and information during the prosecution of the '248 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '248 patent, including David Breed and Brian Roffe.

105.   For at least the foregoing reasons, the claims of the '248 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,757,602:**

106.   United States Patent No. 6,757,602 ("the '602 patent) issued on June 29. 2004. from application serial no. 10/234,436, filed September 2, 2002.

107.   ATI and others substantively involved in the prosecution of the '602 patent failed to disclose a variety of material prior art references and information.

108.   For example, ATI knew of a publication titled "Occupant Sensing Utilizing Pertubation of Electric Fields", SAE Paper No. 951051, by Jinno et al.  The Jinno paper was

published by at least February 24, 1997. ATI and others substantively involved in the prosecution of the '602 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

109.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,474,327 to Schousek.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Schousek by at least May 26, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '978 patent in suit.

110.    Another material reference that was concealed form the PTO is U.S. Patent No. 5,732,375 to Cashler.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Cashler by at least September 3, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as the '100 patent in suit.

111.    Also concealed was U.S. Patent No. 6,252,240 to Gillis et al.  ATI and  others substantively involved in the prosecution of the '602 patent were aware of Gillis by at least January 4, 2002, when it was cited in an Office Action during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,474,683.

112.    Another material prior art reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '602 patent.

113.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

114.    U.S Patent No. 5,906,393 to Mazur was also concealed from the PTO.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Mazur by at least June 12, 2000, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 6,168,198.

115.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '602 patent.

116.    The foregoing references and information were material to the examination of the '602 patent.

117.    The failure to disclose the foregoing references and information during the prosecution of the '602 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '602 patent, including David Breed and Brian Roffe.

118.    For at least the foregoing reasons, the claims of the '602 patent are unenforceable by reason of inequitable conduct.

119.    Each of the foregoing activities not only renders one or more of the ATI Patents unenforceable for inequitable conduct, but also any patent that issues from an application that claims priority to or is otherwise related to any application in which inequitable conduct was committed is likewise tainted and unenforceable.

## EXCEPTIONAL CASE

120.    ——————ATI's attempt to read the claims of the patents-in-suit on the activities and products of ENA and ATI's inequitable conduct makes this case exceptional under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

28

**WHEREFORE**, ENA prays for a judgment:

a)  dismissing ATI's First Amended Complaint with prejudice;

b)  declaring that ENA has not infringed any claim of the ATI Patents and the '022 Patent;

c)  declaring that ENA has not infringed any claim of the'387, '451, '414, and '701 Patents by ENA's supply to GM;

d)  declaring that the ATI Patents and the '022 Patent are invalid;

e)  declaring that the ATI Patents and the '022 Patent are unenforceable due to inequitable conduct;

e)f)adjudging this case to be an exceptional case pursuant to 35 U.S.C. § 285, and awarding ENA its costs and attorneys' fees; and

f)g)granting such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
tgrimm@mnat.com
bschladweiler@mnat.com
(302) 658-9200
  *Attorneys for Defendants*

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE
NBC Tower - Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL  60611
(312) 321-4200

February 16, 2007
524383

30

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007, upon the following individuals in the manner indicated:

### BY HAND

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE  19801

### BY EMAIL

> Andrew Kochanowski, Esquire
> SOMMERS SCHWARTZ, P.C.
> 2000 Town Center, Suite 900
> Southfield, MI  48075
> Email: Akochanowski@sommerspc.com

> Michael H. Baniak, Esquire
> MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
> 300 South Wacker Drive
> Chicago, IL  60606
> Email: baniak@mbhb.com

> */s/ Thomas C. Grimm*
> Thomas C. Grimm (#1098)
> tgrimm@mnat.com

524383

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC., ELESYS NORTH AMERICA, INC., and GENERAL MOTORS CORPORATION,<br><br>Defendants. | Civil Action No. 06-187-GMS<br><br>Judge Gregory M. Sleet |

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF GENERAL MOTORS CORPORATION

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant General Motors Corporation ("GM") answers the First Amended Complaint of Automotive Technologies International, Inc. ("ATI") as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Automotive Technologies International, Inc. ("ATI") is a Delaware corporation.

**ANSWER:**

Admitted.


2.     Defendant American Honda Motor Company ("Honda") is a California corporation.  Defendant Honda imports and sells in the United States automobiles manufactured in Japan and the United States under the "Honda" and "Acura" names.

**ANSWER**:

GM is without knowledge or information sufficient to form a belief as to the truth

of allegations in paragraph 2, and therefore denies these allegations.

3.      Defendant Elesys North America, Inc. ("Elesys") is a Georgia corporation.
Elesys is a supplier of products to the automotive industry.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of allegations in paragraph 3, and therefore denies these allegations.

4.      Defendant General Motors Corporation ("GM") is a Delaware
corporation. GM sells vehicles in the United States under the "Buick," "Pontiac," and
"Saturn" names, among others.

**ANSWER:**

Admitted.

5.      This is an action for patent infringement.  All of the acts of patent
infringement complained of in this Complaint occurred, among other places, within this
judicial district.

**ANSWER**:

GM admits that this purports to be an action for alleged patent infringement.  GM

denies the remaining allegations of paragraph 5.

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a)
and 28 U.S.C. §1331 over this infringement action, arising under the Patent Act, 35
U.S.C. §1 et seq., including §§271 and 281-285.

**ANSWER:**

Admitted.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), (c) and 28
U.S.C. §1400(b).  The Court has personal jurisdiction over each of the parties.

**ANSWER:**

Admitted.  Pursuant to 28 U.S.C. § 1404(a), however, venue is most proper in the

United States District Court for the Eastern District of Michigan.

## GENERAL ALLEGATIONS

8.     The following patents have been issued duly and legally to Plaintiff ATI
on the following dates:

      a.     U.S. Patent No, 5,901,978 entitled "Method and Apparatus for Detecting the Presence of a Child Seat," issued May 11, 1999. (Exhibit 1)

      b.     U.S. Patent No. 6,242,701 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued June 5, 2001.  (Exhibit 2)

      c.     U.S. Patent No. 6,325,414 entitled "Method and Arrangement for Controlling Deployment of a Side Airbag," issued December 4, 2001. (Exhibit 3)

      d.     U.S. Patent No. 6,397,136 entitled "System for Determining the Occupancy State of a Seat in a Vehicle," issued May 28, 2002. (Exhibit 4)

      e.     U.S. Patent No. 6,422,595 entitled "Occupant Position Sensor and Method and Arrangement for Controlling a Vehicular Component Based  on an Occupant's Position," issued July 23, 2002.  (Exhibit 5)

      f.     U.S. Patent No. 6,869,100 entitled "Method and Apparatus for Controlling an Airbag," issued March 22, 2005.  (Exhibit 6)

      g.     U.S. Patent No. 6,757,602 entitled "System For Determining the Occupancy State of a Seat in a Vehicle and Controlling a Component Based Thereon," issued June 29, 2004.  (Exhibit 7)

      h.     U.S. Patent No. 6,712,387 entitled "Method and Apparatus for Controlling Deployment of a Side Airbag," issued March 30, 2004. (Exhibit 8)

      i.     U.S. Patent No. 6,942,248 entitled "Occupant Restraint Device Control System and Method," issued September 13, 2005. (Exhibit 9)

      j.     U.S. Patent No. 6,958,451 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued October 25, 2005.  (Exhibit 10)

      k.     U.S. Patent No. 6,484,080 entitled "Method and Apparatus for Controlling a Vehicular Component," issued November 19, 2002. (Exhibit 11)

      l.     U.S. Patent No. 6,850,824 entitled "Method and Apparatus for Controlling a Vehicular Component," issued February 1, 2005. (Exhibit 12)

**ANSWER**:

GM admits that U.S. Patent Nos. 5,901,978, 6,242,701, 6,325,414, 6,397,136,

6,422,595, 6,869,100, 6,757,602, 6,712,387, 6,942,248, 6,958,451, 6,484,080 and

6,850,824 ("the ATI Patents") are attached to the Plaintiff's First Amended Complaint as

Exhibits 1-12, respectively.  GM admits that ATI is the listed assignee on the face of the

ATI Patents.  GM admits that the ATI Patents have titles of inventions and the issue dates

identified in paragraph 8, a-l.  GM is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in paragraph 8, and therefore denies

the remaining allegations.

## PATENT INFRINGEMENT

9.      All of the patents set forth in paragraph 8, a-l (collectively, "the ATI
Patents"), are valid, subsisting, enforceable, and are presently owned by ATI and have
been owned by ATI for all times relevant hereto.

**ANSWER:**

GM denies that all of the patents set forth in paragraph 8, a-1, are valid.  GM is

without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 9, and therefore denies these allegations.

10.      The general subjects covered by the ATI Patents include, but are not
limited to occupant sensing, position sensing, weight sensing, airbag deployment, and
related systems as used in a vehicle containing airbags.

**ANSWER:**

GM admits that some of the subjects identified in paragraph 10 are addressed in

some of the ATI Patents.  GM is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 10, and therefore denies

these allegations.

11.    Among the products made, sold, used, or imported by Elesys are the following:

a.    "Passenger Sensing System";
b.    "Seat Sentry System";
c.    "Occupant Detection System"; and
d.    "Low Risk Deployment System".

**ANSWER:**

GM admits that Elesys North America, Inc. (ENA) sold the electronic control

units ("ECUs") and sensor assemblies for the Passenger Sensing System to GM.  GM is

without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 11, and therefore denies these allegations.

12.    Elesys sells some or all of the above systems, either singularly or in
combination, to Defendants Honda and GM.  Upon information and belief, Elesys has
supplied Honda since approximately 2001.  Upon information and belief, Elesys has
supplied GM since 2004.  Elesys has recently announced the intention to supply the
product systems, or some of them, to approximately 1.1 million additional GM vehicles.

**ANSWER:**

GM admits that ENA has sold the ECUs and the sensor assemblies for the

Passenger Sensing System to GM since at least 2004.  GM is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 12, and therefore denies these allegations.

13.    All of the product systems referenced above infringe, directly or by
contributory infringement, the ATI Patents.  None of the Defendants has any right or
license from ATI under the ATI Patents.

**ANSWER:**

GM is aware of a license between ATI and NEC but ATI has failed to produce it

in the litigation.  Until it has an opportunity to consider it, GM is without information or

knowledge sufficient to form a belief as to the truth of the whether it has a license under

the ATI Patents and therefore denies this allegation.  GM also denies the remaining

allegations in paragraph 13. ~~admits that GM has no license from ATI under the ATI~~

~~Patents.  GM denies the remaining allegations in paragraph 13.~~

      14.     Defendant Honda makes, uses, imports and/or sells vehicles with an occupant position detection system called Occupant Position Detection System ("OPDS") in various model Hondas and Acuras sold in the United States.  The OPDS system may vary slightly from model to model, but on information and belief, contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry and/or the Low Risk Deployment System (since 2006).  Certain portions of the OPDS system are supplied by other automotive suppliers.  Among the variations of the OPDS system used in Honda and Acura vehicles is a system employing a strain gage weight sensor and/or seat belt sensors.  The OPDS system comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s).  Upon information and belief, the OPDS system has been used in the following models:

| Year | Model |
|------|-------|
| 2002 | Honda Accord |
| 2003 | Honda Accord |
| 2003 | Honda Civic Hybrid |
| 2004 | Honda Accord |
| 2005 | Honda Odyssey |
| 2005 | Honda Pilot |
| 2005 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2005 | Honda Accord |
| 2005 | Honda Element |
| 2006 | Honda Element |
| 2006 | Honda Accord |
| 2006 | Honda CRV |
| 2006 | Honda Ridgeline |
| 2006 | Honda Civic |
| 2006 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2001 | Acura MDX |
| 2002 | Acura MDX |
| 2002 | Acura 3.2 CL |
| 2003 | Acura TL |
| 2003 | Acura MDX |
| 2004 | Acura TL |
| 2004 | Acura MDX |

| 2005 | Acura TL |
|------|----------|
| 2005 | Acura MDX |
| 2006 | Acura TSX |
| 2006 | Acura TL |
| 2006 | Acura RL |
| 2006 | Acura MDX |

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 14, and therefore denies these allegations.

15.     Upon information and belief, additional Honda and Acura models to those listed in paragraph 14 have been equipped with the OPDS system, and continue to be sold in the United States with the OPDS system.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 15, and therefore denies these allegations.

16.     Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 16, and therefore denies these allegations.

17.     Defendant Honda markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 17, and therefore denies these allegations.

18.     Defendant GM makes, uses, and sells vehicles which employ some or all of the Elesys product systems set forth above in paragraph 11, called in some instance, the Passenger Presence System.  Certain GM vehicles use the Elesys systems in

conjunction with seatbelt sensors. The Elesys system in GM vehicles comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s). Upon information and belief the Elesys systems are supplied in the following GM vehicles:

| Year | Model |
|------|-------|
| 2005 | Pontiac G6 |
| 2006 | Pontiac G6 |
| 2005 | Pontiac Grand Prix |
| 2006 | Pontiac Grand Prix |
| 2005 | Saturn Ion |
| 2006 | Saturn Ion |
| 2005 | Saturn Vue |
| 2006 | Saturn Vue |
| 2005 | Buick LaCrosse |
| 2006 | Buick LaCrosse |

**ANSWER:**

GM admits that GM made, used and sold vehicles containing the Passenger

Sensing System. GM admits that the following vehicles employ the Passenger Sensing

System: 2006 Pontiac G6, 2006 Pontiac Grand Prix, 2006 Saturn Ion, 2006 Saturn Vue,

2005 Buick LaCrosse and 2006 Buick LaCrosse. GM denies the remaining allegations of

paragraph 18.


19.    Upon information and belief, GM makes and sells other models than those listed in Paragraph 17 [sic, 18] with the Passenger Presence System or other-named system using Elesys products. Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents set forth in paragraph 8, with the exception of the '387, '451, '414, and '701 Patents. Defendant GM markets and sells these models to the public. Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

GM admits that it marketed and sold to the public vehicles listed in the table of

paragraph 18. GM denies the remaining allegations in paragraph 19.


20.    At least as early as February, 2004, ATI advised Elesys of the existence of various of the above-listed patents and sought to discuss the license of the ATI Patents to

Elesys. Elesys was formed as a joint venture between Defendant Honda and a third-party, NEC, Inc., another automotive supplier. Upon information and belief, as of February, 2004, Honda had knowledge of various of the ATI patents at issue in this case. Additionally, certain of the patents at issue in this action have been actually known to NEC and Honda, Japan, earlier than February, 2004.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 20, and therefore denies these allegations.


21.     In addition to the above, beginning in October, 2005, ATI placed Honda on notice of certain patents at issue in this lawsuit via written communications with Koichi Kondo, William R. Willen, of Honda, and Takeo Oi, Intellectual Property Division of Honda Motor Company, Ltd. in Japan. As a result, Honda has known of certain if not all of the patents at issue in this case prior to this Complaint.

**ANSWER:**

GM is without knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 21, and therefore denies these allegations.


**AFFIRMATIVE DEFENSES**

Further responding to ATI's First Amended Complaint, GM asserts the following

affirmative defenses and reserves the right to amend its Answer as additional information

becomes available:

1.     ATI's claims are barred by laches and estoppel.

2.     GM incorporates by reference as affirmative defenses the allegations set

forth below supporting its Counterclaims.


**COUNTERCLAIMS**

For its Counterclaims against ATI, GM states as follows:

1.    This Court has jurisdiction over these Counterclaims pursuant to Rule 13, Fed. R. Civ. P.  Jurisdiction in this Court also is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper for these Counterclaims because ATI elected this forum for suit and pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Pursuant to 28 U.S.C. § 1404(a), venue is also proper in the United States District Court for the Eastern District of Michigan.

2.    An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of the U.S. Patent Nos. 5,901,978, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,942,248, 6,484,080, and 6,850,824 ("Patents-in-suit").

### FIRST COUNTERCLAIM
### DECLARATION OF NONINFRINGEMENT OF THE PATENTS-IN-SUIT

3.    GM repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

4.    GM has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the Patents-in-suit.

### SECOND COUNTERCLAIM
### DECLARATION OF INVALIDITY OF THE PATENTS-IN-SUIT

5.    GM repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

6.    The Patents-in-suit are invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

### THIRD COUNTERCLAIM
### DECLARATION OF UNENFORCEABILITY OF ATI PATENTS

7.    During the prosecution of the ATI Patents, ATI and others substantively involved in the prosecution of the ATI patents deliberately engaged in a pattern of conduct that was misleading and calculated to mislead the United States Patent Office ("the PTO") into granting ATI patent coverage to which ATI was and is not entitled.

8.    Those involved in this scheme included at least the following individuals at ATI, all of whom were substantively involved in the prosecution of the ATI Patents, Brian Roffe, Samuel Shipkovtz, Karl Milde, David Breed, Wilbur Duvall, Wendell Johnson, and Ray Piirainen.

9.    ATI and others substantively involved in the prosecution of the ATI Patents filed numerous patent applications directed to subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the ATI Patents.

10.    In addition, ATI and those substantively involved in the prosecution of the ATI Patents deliberately concealed from the PTO material prior art and other material information or, in the alternative, in those instances when material prior art was disclosed to the PTO, it was buried in a mountain of immaterial prior art in an effort by ATI to mislead the PTO into overlooking the most material information.

11.    Another tactic employed by ATI and others substantively involved in the prosecution of the ATI Patents was the practice of filing numerous "continuation" and "continuation in part" applications claiming priority to earlier filed ATI applications. This practice of filing numerous continuation applications was intended to pre-date the prior art activities of others that would have otherwise barred ATI from obtaining patent coverage.  ATI knew or should have known that many of its priority claims were without

merit.  Worse yet, ATI's numerous patent filings were designed to be so convoluted that the examiners assigned to examine ATI's various patent applications could not meaningfully review and challenge ATI's priority claims.

12.    In addition, several of the ATI Patents claim (or did claim) priority through a convoluted chain of applications reaching back to patent application serial no. 07/878,571, filed May 5, 1992.  These ATI Patents include at least U.S. Patent Nos. 6,422,595; 6,869,100; and 6,942,248.  However, these patents were not entitled to claim priority to application serial no. 07/878,571 because of a lack of co-pendency. Application serial no. 07/878,571 was abandoned on March 23, 1993.  The next application in the chain of priority, application serial no. 08/040,978, was not filed until some eight days later, on March 31, 1993.  Upon information and belief, one or more persons substantively involved in the prosecution of the ATI Patents were aware of the lack of co-pendency yet ATI nonetheless claimed priority to application serial no. 07/878,571.  Moreover, in an effort to cure this lack of co-pendency, ATI and others substantively involved in the prosecution of the ATI Patents, including David Breed and Brain Roffe, were not candid in connection with the Petitions filed under 37 C.F.R. §1.137(b) and the accompanying "Declaration of Facts".  The lack of candor related to the explanation provided by ATI for the lengthy delay between the date that application serial no. 07/878,571 was abandoned (e.g., March 23, 1993) and the filing of the aforementioned petitions, the first of which was filed on August 15, 2001.  Based upon this lack of candor, the PTO was misled into granting ATI's petition.

13.    The foregoing activities were material and intended by ATI and others substantively involved in the prosecution of the ATI Patents to mislead the PTO. As a result, the ATI Patents are unenforceable by reason of inequitable conduct.

14.    In addition, ATI and others substantively involved in the prosecution of the various ATI Patents committed additional acts of inequitable conduct, which, standing alone, render the below identified patents unenforceable.

**United States Patent Nos. 6,484,080:**

15.    United States Patent No. 6,484,080 ('the '080 patent) issued on November 19, 2002, from application serial no. 09/753,186, filed January 2, 2001.

16.    ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, knew of several material prior art references during the prosecution of the '080 patent, yet they deliberately concealed this prior art from the PTO.

17.    One such material prior art reference is U.S. Patent No. 5,602,734 to Kithil. ATI and others substantive involved in the prosecution of the '080 patent were aware of this prior art reference during the prosecution of another ATI patent application, which later issued as the '978 patent in suit.

18.    Another material prior art reference that was withheld from the PTO is U.S. Patent No. 5,573,269 to Gentry. ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, were aware of the Gentry reference by at least March 22, 1998, when Gentry was cited in another ATI patent application, which later issued as U.S. Patent 6,242,701 ("the '701 patent") in suit.

19.     Other material prior art references deliberately concealed from the PTO are U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et al.; U.S Patent No. 5,714,695 to Bruns; U.S. Patent No. 6,039,344 to Mehney; and U.S. Patent No. 6,069,325 (and counterpart EP 0950560 published October 1999). ATI and others substantively involved in the prosecution of the '080 patent were aware of these references prior to the issue date of the '080 patent.

20.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '080 patent.

21.     The foregoing references and information were material to the examination of the '080 patent.

22.     The failure to disclose the foregoing references and information during the prosecution of the '080 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe.

23.     For at least the foregoing reasons, the claims of the '080 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent 6,850,824:**

24.     United States Patent No. 6,850,824 ("the '824 patent) issued February 1, 2005, from application serial no. 10/613,453, filed July 3, 2003.

25.     The '824 patent is related to the '080 patent. The '824 patent issued from a continuation-in-part application of, and claims priority to, the application that issued as the '080 patent. The inequitable conduct committed in connection with the '080 patent is also pertinent and related to the claims of the '824 patent. As such, the claims of the '824

patent are likewise unenforceable because of the inequitable conduct committed during the prosecution of the '080 patent.

**U.S. Patent No. 6,397,136:**

26.    U.S. Patent No. 6,397,136 ("the '136 patent") issued on May 28, 2002, from application serial no. 09/474,147, filed December 29, 1999.

27.    ATI and other substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of at least several material prior art references during the prosecution of the '136 patent but deliberately concealed this material prior art from the PTO.

28.    One of these prior art references concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

29.    Another material prior reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '136 patent.

30.    Another material prior art reference concealed from the PTO is U.S. Patent No. 5,528,698 to Kamei et al.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least July 13, 1998, when it was cited by the PTO in another ATI patent application, which later issued as the '978 patent in suit.

31.     U.S. Patent No. 5,525,843 to Howing is another material prior art reference concealed by ATI.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least April 2, 2002, when ATI cited Howing in an IDS during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,942,248.

32.     WO94-22693, which is a PCT application assigned to ATI and published by at least October 13, 1994, was also concealed from the PTO.

33.     SAE Technical Paper 951051 titled "Occupant Sensing Utilizing Perturbation of Electric Fields", by Jinno et al. was also concealed from the PTO.  This paper was published by at least February 1997.  ATI and those substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least May 20, 2002, when this reference was cited in an IDS during prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

34.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '136 patent.

35.     The foregoing references and information were material to the examination of the '136 patent.

36.     The failure to disclose the foregoing references and information during the prosecution of the '136 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

37.    For at least the foregoing reasons, the claims of the '136 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,422,595:**

38.    United States Patent No. 6,422,595 ("the '595 patent") issued on July 23, 2002, from application serial no. 09/639,299, filed August 15, 2000.

39.    ATI and others substantively involved in the prosecution of the '595 patent were aware of various material prior art references, yet failed to disclose this information to the PTO during prosecution of the '595 patent.

40.    One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '595 patent.

41.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

42.    Another material prior art reference that was concealed is U.S. Patent No. 5,482,314 to Corrado et al.  ATI and others substantively involved in the prosecution of the '595 patent were aware of Corrado by at least November 18, 1996, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

43.    Also concealed from the PTO was WO97/04984, which published by at least February 13, 1997.  Upon information and belief, ATI and others substantively

involved in the prosecution of the '595 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

44.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '595 patent.

45.    The foregoing references and information were material to the examination of the '595 patent.

46.    The failure to disclose the foregoing references and information during the prosecution of the '595 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

47.    For at least the foregoing reasons, the claims of the '595 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 5,901,978:**

48.    United States Patent No. 5,901,978 ("the '978 patent) issued on May 11, 1999, from application serial no. 09/084,641, filed May 26, 1998.

49.    ATI and others substantively involved in the prosecution of the '978 patent were aware of material prior art references but failed to disclose these references to the PTO during prosecution of the '978 patent.

50.    One such reference is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '978 patent.

51.     Another material prior art reference that was concealed is U.S. Patent No. 5,785,347 to Adolph.  ATI and others substantively involved in the prosecution of the '978 patent were aware of Adolph by at least March 22, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '701 patent in suit.

52.     Another material prior art reference that was concealed is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '978 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the application that issued as the '701 patent in suit.

53.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '978 patent.

54.     The foregoing references and information were material to the examination of the '978 patent.

55.     The failure to disclose the foregoing references and information during the prosecution of the '978 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '978 patent, including David Breed and Brian Roffe.

56.     For at least the foregoing reasons, the claims of the '978 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,942,248:**

57.     United States Patent No. 6,942,248 ("the '248 patent") issued on September 13, 2005, from application serial no. 10/114,533, filed April 2, 2002.

58.     ATI and others substantively involved in the prosecution of the '248 patent were aware of several material prior art references but concealed this prior art from the PTO.

59.     One such reference is GB 2 289 332, which was published by at least November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '248 patent.

60.     Another material prior art reference that was concealed is WO95/18028, which was published by at least July 6, 1995. ATI and others substantively involved in the prosecution of the '248 patent were aware of this reference by at least February 12, 2001, when its counterpart, U.S. Patent No. 5,782,485 was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,529,809.

61.     Another material prior art reference concealed by ATI is U.S. Patent No. 5,702,123 to Takahashi. ATI and others substantively involved in the prosecution of the '248 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the '701 patent in suit.

62.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '248 patent.

63.     The foregoing references and information were material to the examination of the '248 patent.

64.     The failure to disclose the foregoing references and information during the prosecution of the '248 patent was motivated by an intent to deceive the PTO on the part

of ATI and others substantively involved in the prosecution of the '248 patent, including David Breed and Brian Roffe.

65.    For at least the foregoing reasons, the claims of the '248 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,757,602:**

66.    United States Patent No. 6,757,602 ("the '602 patent) issued on June 29, 2004. from application serial no. 10/234,436, filed September 2, 2002.

67.    ATI and others substantively involved in the prosecution of the '602 patent failed to disclose a variety of material prior art references and information.

68.    For example, ATI knew of a publication titled "Occupant Sensing Utilizing Pertubation of Electric Fields", SAE Paper No. 951051, by Jinno et al. The Jinno paper was published by at least February 24, 1997. ATI and others substantively involved in the prosecution of the '602 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

69.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,474,327 to Schousek. ATI and others substantively involved in the prosecution of the '602 patent were aware of Schousek by at least May 26, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '978 patent in suit.

70.    Another material reference that was concealed form the PTO is U.S. Patent No. 5,732,375 to Cashler. ATI and others substantively involved in the prosecution of the '602 patent were aware of Cashler by at least September 3, 2002, when

it was cited in an IDS filed in another ATI patent application, which later issued as the '100 patent in suit.

71.    Also concealed was U.S. Patent No. 6,252,240 to Gillis et al.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Gillis by at least January 4, 2002, when it was cited in an Office Action during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,474,683.

72.    Another material prior art reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '602 patent.

73.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

74.    U.S Patent No. 5,906,393 to Mazur was also concealed from the PTO. ATI and others substantively involved in the prosecution of the '602 patent were aware of Mazur by at least June 12, 2000, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 6,168,198.

75.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '602 patent.

76.    The foregoing references and information were material to the examination of the '602 patent.

77.    The failure to disclose the foregoing references and information during the prosecution of the '602 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '602 patent, including David Breed and Brian Roffe.

78.    For at least the foregoing reasons, the claims of the '602 patent are unenforceable by reason of inequitable conduct.

79.    Each of the foregoing activities not only renders one or more of the ATI Patents unenforceable for inequitable conduct, but also any patent that issues from an application that claims priority to or is otherwise related to any application in which inequitable conduct was committed is likewise tainted and unenforceable.

## EXCEPTIONAL CASE

ATI's attempt to read the claims of the patents-in-suit on the activities and products of GM and ATI's inequitable conduct in light of the prior art, and its improper assertion of infringement in the Patent Office make this case exceptional under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

**WHEREFORE**, GM prays for a judgment:

a)  dismissing ATI's First Amended Complaint with prejudice;

b)  declaring that GM has not infringed any claim of the Patents-in-suit;

c)  declaring that the Patents-in-suit are invalid;

d)  declaring that the ATI Patents are unenforceable due to inequitable conduct;

d)e)        adjudging this case to be an exceptional case pursuant to 35 U.S.C. § 285, and awarding GM its costs and attorney fees; and

e)f)granting such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
bschladweiler@mnat.com
Attorneys for General Motors Corporation

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE
455 N. Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, IL  60611-5599
(312) 321-4200

February 14, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Richard K. Herrmann, Esquire
MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007, upon the following individuals in the manner indicated:

**BY HAND**

Richard K. Herrmann, Esquire
MORRIS, JAMES, HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801

**BY EMAIL**

Andrew Kochanowski, Esquire
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI  48075
Email: Akochanowski@sommerspc.com

Michael H. Baniak, Esquire
MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, IL  60606
Email: baniak@mbhb.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AUTOMOTIVE TECHNOLOGIES INTERNATIONAL, INC., | ) ) ) ) ) | Civil Action No. 06-187-GMS |
| Plaintiff, | ) ) ) | Judge Gregory M. Sleet |
| v. | ) ) | |
| AMERICAN HONDA MOTOR CO., INC., ELESYS NORTH AMERICA, INC., and GENERAL MOTORS CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF AMERICAN HONDA MOTOR CO., INC.

Pursuant to Fed. R. Civ. P. 8 and 12, Defendant American Honda Motor Co., Inc.

("Honda"), answers the First Amended Complaint of Automotive Technologies

International, Inc. ("ATI") as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Automotive Technologies International, Inc. ("ATI") is a Delaware corporation.

**ANSWER:**

Admitted.

2.      Defendant American Honda Motor Company ("Honda") is a California corporation.  Defendant Honda imports and sells in the United States automobiles manufactured in Japan and the United States under the "Honda" and "Acura" names.

**ANSWER**:

Honda admits that it is a California corporation.  Honda admits that it imports and sells in the United States certain vehicles manufactured in Japan under the "Honda" and "Acura" names.  Honda admits that it sells in the United States vehicles manufactured in the United States under the "Honda" and "Acura" names.

3.    Defendant Elesys North America, Inc. ("Elesys") is a Georgia corporation. Elesys is a supplier of products to the automotive industry.

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3, and therefore denies these allegations.

4.    Defendant General Motors Corporation ("GM") is a Delaware corporation. GM sells vehicles in the United States under the "Buick," "Pontiac," and "Saturn" names, among others.

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, and therefore denies these allegations.

5.    This is an action for patent infringement.  All of the acts of patent infringement complained of in this Complaint occurred, among other places, within this judicial district.

**ANSWER**:

Honda admits that this purports to be an action for alleged patent infringement. Honda denies the remaining allegations of paragraph 5.

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331 over this infringement action, arising under the Patent Act, 35 U.S.C. §1 et seq., including §§271 and 281-285.

**ANSWER:**

Admitted.


7.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), (c) and 28 U.S.C. §1400(b).  The Court has personal jurisdiction over each of the parties.

**ANSWER:**

Admitted.  Pursuant to 28 U.S.C. § 1404(a), however, venue is most proper in the

United States District Court for the Eastern District of Michigan.


**JURISDICTION AND VENUE**

8.    The following patents have been issued duly and legally to Plaintiff ATI on the following dates:

        a.    U.S. Patent No. 5,901,978 entitled "Method and Apparatus for Detecting the Presence of a Child Seat," issued May 11, 1999. (Exhibit 1)

        b.    U.S. Patent No. 6,242,701 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued June 5, 2001.  (Exhibit 2)

        c.    U.S. Patent No. 6,325,414 entitled "Method and Arrangement for Controlling Deployment of a Side Airbag," issued December 4, 2001.  (Exhibit 3)

        d.    U.S. Patent No. 6,397,136 entitled "System for Determining the Occupancy State of a Seat in a Vehicle," issued May 28, 2002. (Exhibit 4)

        e.    U.S. Patent No. 6,422,595 entitled "Occupant Position Sensor and Method and Arrangement for Controlling a Vehicular Component Based  on an Occupant's Position," issued July 23, 2002.  (Exhibit 5)

        f.    U.S. Patent No. 6,869,100 entitled "Method and Apparatus for Controlling an Airbag," issued March 22, 2005.  (Exhibit 6)

        g.    U.S. Patent No. 6,757,602 entitled "System For Determining the Occupancy State of a Seat in a Vehicle and Controlling a Component Based Thereon," issued June 29, 2004.  (Exhibit 7)

        h.    U.S. Patent No. 6,712,387 entitled "Method and Apparatus for Controlling Deployment of a Side Airbag," issued March 30, 2004. (Exhibit 8)

        i.    U.S. Patent No. 6,942,248 entitled "Occupant Restraint Device Control System and Method," issued September 13, 2005. (Exhibit 9)

3

    j.     U.S. Patent No. 6,958,451 entitled "Apparatus and Method for Measuring Weight of an Occupying Item of a Seat," issued October 25, 2005. (Exhibit 10)

    k.     U.S. Patent No. 6,484,080 entitled "Method and Apparatus for Controlling a Vehicular Component," issued November 19, 2002. (Exhibit 11)

    l.     U.S. Patent No. 6,850,824 entitled "Method and Apparatus for Controlling a Vehicular Component," issued February 1, 2005. (Exhibit 12)

**ANSWER**:

Honda admits that U.S. Patent Nos. 5,901,978, 6,242,701, 6,325,414, 6,397,136, 6,422,595, 6,869,100, 6,757,602, 6,712,387, 6,942,248, 6,958,451, 6,484,080 and 6,850,824 ("the ATI Patents") are attached to the Plaintiff's First Amended Complaint as Exhibits 1-12, respectively. Honda admits that ATI is the listed assignee on the face of the ATI Patents. Honda admits that the ATI Patents have titles of inventions and the issue dates identified in paragraph 8, a-l. Honda is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and on that basis, denies these allegations.

## PATENT INFRINGEMENT

    9.     All of the patents set forth in paragraph 8, a-l (collectively, "the ATI Patents"), are valid, subsisting, enforceable, and are presently owned by ATI and have been owned by ATI for all times relevant hereto.

**ANSWER:**

Honda denies that all of the patents set forth in paragraph 8, a-l, are valid. Honda is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9, and therefore denies these allegations.

10.     The general subjects covered by the ATI Patents include, but are not limited to occupant sensing, position sensing, weight sensing, airbag deployment, and related systems as used in a vehicle containing airbags.

**ANSWER:**

Honda admits that some of the subjects identified in paragraph 10 are addressed

in some of the ATI Patents.  Honda is without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in paragraph 10, and therefore

denies these allegations.

11.     Among the products made, sold, used, or imported by Elesys are the following:
  a.     "Passenger Sensing System";
  b.     "Seat Sentry System";
  c.     "Occupant Detection System"; and
  d.     "Low Risk Deployment System".

**ANSWER:**

Honda admits that Elesys North America, Inc. ("ENA") has supplied to Honda,

through third-parties, electronic control units ("ECUs") that are used in the Occupant

Detection System.  Honda is without knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 11, and therefore denies the allegations.

12.     Elesys sells some or all of the above systems, either singularly or in combination, to Defendants Honda and GM.  Upon information and belief, Elesys has supplied Honda since approximately 2001.  Upon information and belief, Elesys has supplied GM since 2004.  Elesys has recently announced the intention to supply the product systems, or some of them, to approximately 1.1 million additional GM vehicles.

**ANSWER:**

Honda admits that ENA has supplied to Honda, through third-parties, the ECUs

that are used in the Occupant Detection System since 2005.  Honda is without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations in

5

paragraph 12, and therefore denies the remaining allegations.

13.    All of the product systems referenced above infringe, directly or by contributory infringement, the ATI Patents. None of the Defendants has any right or license from ATI under the ATI Patents.

**ANSWER:**

Honda is aware of a license between ATI and NEC but ATI has failed to produce it in the litigation. Until it has an opportunity to consider it, Honda is without information or knowledge sufficient to form a belief as to the truth of the whether it has a license under the ATI Patents and therefore denies this allegation. Honda also denies the remaining allegations in paragraph 13. ~~Honda admits that Honda has no license from ATI under the ATI Patents. Honda denies the remaining allegations in paragraph 13.~~

14.    Defendant Honda makes, uses, imports and/or sells vehicles with an occupant position detection system called Occupant Position Detection System ("OPDS") in various model Hondas and Acuras sold in the United States. The OPDS system may vary slightly from model to model, but on information and belief, contains the Elesys Passenger Sensing System, the Occupant Detection System, the Seat Sentry and/or the Low Risk Deployment System (since 2006). Certain portions of the OPDS system are supplied by other automotive suppliers. Among the variations of the OPDS system used in Honda and Acura vehicles is a system employing a strain gage weight sensor and/or seat belt sensors. The OPDS system comprises and controls, or works in conjunction with a controller for, among other things, suppressing or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped with the system(s). Upon information and belief, the OPDS system has been used in the following models:

| Year | Model |
|------|-------|
| 2002 | Honda Accord |
| 2003 | Honda Accord |
| 2003 | Honda Civic Hybrid |
| 2004 | Honda Accord |
| 2005 | Honda Odyssey |
| 2005 | Honda Pilot |
| 2005 | Honda Accord Hybrid |

| Year | Model |
|------|-------|
| 2005 | Honda Accord |
| 2005 | Honda Element |

6

| 2006 | Honda Element |
| 2006 | Honda Accord |
| 2006 | Honda CRV |
| 2006 | Honda Ridgeline |
| 2006 | Honda Civic |
| 2006 | Honda Accord Hybrid |

| Year | Model |
| --- | --- |
| 2001 | Acura MDX |
| 2002 | Acura MDX |
| 2002 | Acura 3.2 CL |
| 2003 | Acura TL |
| 2003 | Acura MDX |
| 2004 | Acura TL |
| 2004 | Acura MDX |
| 2005 | Acura TL |
| 2005 | Acura MDX |
| 2006 | Acura TSX |
| 2006 | Acura TL |
| 2006 | Acura RL |
| 2006 | Acura MDX |

**ANSWER:**

Honda admits that it imported certain vehicles listed in the tables of paragraph 14 in the United States. Honda admits that it sold in the United States vehicles listed in the tables of paragraph 14. Honda admits that ENA has supplied to Honda, through third-parties, the ECUs that are used in the Occupant Position Detection System ("the OPDS") to Honda. Honda admits that the sensors for the OPDS have been provided, through third-parties, by a supplier other than ENA. Honda admits that the OPDS is for use with a side airbag system. Honda admits that the OPDS has been used in the following vehicle models: 2002, 2003 and 2004 Honda Accord as an option, 2005 Honda Odyssey, 2005 Honda Pilot, 2005 Honda Accord Hybrid, 2005 Honda Accord, 2005 and 2006 Honda Element as an option, 2006 Honda CRV, 2006 Honda Accord Hybrid, 2001, 2002, 2003, 2004, 2005 and 2006 Accura MDX, 2002 Accura 3.2.CL, 2003, 2004, 2005 and

2006 Accura TL, and 2006 Accura RL.  Honda denies the remaining allegations in

paragraph 14.

15.    Upon information and belief, additional Honda and Acura models to those
listed in paragraph 14 have been equipped with the OPDS system, and continue to be sold
in the United States with the OPDS system.

**ANSWER:**

Honda admits that certain Honda and Acura vehicles having the OPDS are not

listed in the tables of paragraph 14.  Honda denies the remaining allegations in paragraph

15.

16.    Each of the vehicles listed above, and those vehicles not specifically listed
but which use the system described above, infringe the ATI Patents.

**ANSWER:**

Honda denies that any Honda or Acura model vehicle, or any system used therein,

infringes the ATI Patents.  Honda is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in paragraph 16, and therefore denies

the remaining allegations.

17.    Defendant Honda markets and sells these models to the public.  Defendant
will continue to do so unless enjoined by this Court.

**ANSWER:**

Honda admits that Honda markets and sells to the public the models identified in

the tables of paragraph 14.  Honda denies the remaining allegations of paragraph 17.

18.    Defendant GM makes, uses, and sells vehicles which employ some or all
of the Elesys product systems set forth above in paragraph 11, called in some instance,
the Passenger Presence System.  Certain GM vehicles use the Elesys systems in
conjunction with seatbelt sensors.  The Elesys system in GM vehicles comprises and
controls, or works in conjunction with a controller for, among other things, suppressing
or allowing the deployment of side airbags and side curtain airbags in a vehicle equipped

8

with the system(s).   Upon information and belief the Elesys systems are supplied in the following GM vehicles:

| Year | Model |
|------|-------|
| 2005 | Pontiac G6 |
| 2006 | Pontiac G6 |
| 2005 | Pontiac Grand Prix |
| 2006 | Pontiac Grand Prix |
| 2005 | Saturn Ion |
| 2006 | Saturn Ion |
| 2005 | Saturn Vue |
| 2006 | Saturn Vue |
| 2005 | Buick LaCrosse |
| 2006 | Buick LaCrosse |

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the

truth of allegations in paragraph 18, and therefore denies the allegations.

19.    Upon information and belief, GM makes and sells other models than those listed in Paragraph 17 [sic, 18] with the Passenger Presence System or other-named system using Elesys products.  Each of the vehicles listed above, and those vehicles not specifically listed but which use the system described above, infringe the ATI Patents set forth in paragraph 8, with the exception of the '387, '451, '414, and '701 Patents. Defendant GM markets and sells these models to the public.  Defendant will continue to do so unless enjoined by this Court.

**ANSWER:**

Honda is without knowledge or information sufficient to form a belief as to the

truth of allegations in paragraph 19, and therefore denies the allegations.

20.    At least as early as February, 2004, ATI advised Elesys of the existence of various of the above-listed patents and sought to discuss the license of the ATI Patents to Elesys.  Elesys was formed as a joint venture between Defendant Honda and a third-party, NEC, Inc., another automotive supplier.  Upon information and belief, as of February, 2004, Honda had knowledge of various of the ATI patents at issue in this case. Additionally, certain of the patents at issue in this action have been actually known to NEC and Honda, Japan, earlier than February, 2004.

**ANSWER:**

9

Honda denies that ENA was formed as a joint venture between Honda and NEC, Inc. ENA is wholly owned by Honda elesys Co., Ltd., which is a joint venture between Honda Motor Co., Ltd. and NEC, Inc. Honda denies that it had knowledge of "various of the ATI patents at issue in this case" as of February 2004. Honda is without knowledge or information sufficient to form a belief to the truth of the remaining allegations in paragraph 20, and therefore denies these allegations.

21.    In addition to the above, beginning in October, 2005, ATI placed Honda on notice of certain patents at issue in this lawsuit via written communications with Koichi Kondo, William R. Willen, of Honda, and Takeo Oi, Intellectual Property Division of Honda Motor Company, Ltd. in Japan. As a result, Honda has known of certain if not all of the patents at issue in this case prior to this Complaint.

**ANSWER:**

Honda admits that ATI sent Koichi Kondo and William R. Willen, respectively, letters dated October 14, 2005, with respect to the '701 patent. Honda admits that ATI sent Takeo Oi, Manager of Intellectual Property Division of Honda Motor Co., Ltd. in Japan a letter dated January 26, 2006, with respect to the '701, the '978, the '414, the '136, the '595, the '100, the '602, the '387, the '248, the '451, and the '080 patents. Honda admits that it had knowledge of the '701 prior to ATI's Complaint. Honda denies the remaining allegations in paragraph 21.

**AFFIRMATIVE DEFENSES**

Further responding to ATI's First Amended Complaint, Honda asserts the following affirmative defenses and reserves the right to amend its Answer as additional information becomes available:

1.    ATI's claims are barred by laches and estoppel.

10

2.    Honda incorporates by reference as affirmative defenses the allegations set forth below supporting its Counterclaims.

## COUNTERCLAIMS

For its Counterclaims against ATI, Honda states as follows:

1.    This Court has jurisdiction over these Counterclaims pursuant to Rule 13, Fed. R. Civ. P.  Jurisdiction in this Court also is proper pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Venue is proper for these Counterclaims because ATI elected this forum for suit and pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Pursuant to 28 U.S.C. § 1404(a), venue is also proper in the United States District Court for the Eastern District of Michigan.

2.    An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of the ATI Patents.

3.    An actual controversy exists between the parties as to the asserted infringement, validity, and enforceability of U.S. Patent No. 6,950,022 ("the '022 Patent").  ATI asserted the infringement, validity and enforceability of the '022 Patent in the Complaint and removed the assertions based on the '022 Patent in the First Amended Complaint.

## FIRST COUNTERCLAIM

## DECLARATION OF NONINFRINGEMENT OF THE ATI PATENTS

4.    Honda repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

5.    Honda has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the ATI Patents.

11

## SECOND COUNTERCLAIM

## DECLARATION OF INVALIDITY OF THE ATI PATENTS

6.　　Honda repeats and realleges the allegations of paragraphs 1 through 2 of these Counterclaims.

7.　　The ATI Patents are invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

## THIRD COUNTERCLAIM
## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 6,950,022

8.　　Honda repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

9.　　Honda has not infringed and is not infringing, either directly, contributorily, or by active inducement, any claim of the '022 Patent.

## FOURTH COUNTERCLAIM
## DECLARATION OF INVALIDITY OF U.S. PATENT NO. 6,950,022

10.　　Honda repeats and realleges the allegations of paragraphs 1 and 3 of these Counterclaims.

11.　　The '022 Patent is invalid and void for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, §§ 102, 103, and 112.

## FIFTH COUNTERCLAIM

## DECLARATION OF UNENFORCEABLITY OF ATI PATENTS

12.　　During the prosecution of the ATI Patents (For purposes of the Fifth Counterclaim all references to "the ATI Patents" includes the '022 Patent), ATI and

12

others substantively involved in the prosecution of the ATI Patents deliberately engaged in a pattern of conduct that was misleading and calculated to mislead the United States Patent Office ("the PTO") into granting ATI patent coverage to which ATI was and is not entitled.

13.    Those involved in this scheme included at least the following individuals at ATI, all of whom were substantively involved in the prosecution of the ATI Patents, Brian Roffe, Samuel Shipkovtz, Karl Milde, David Breed, Wilbur Duvall, Wendell Johnson, and Ray Piirainen.

14.    ATI and others substantively involved in the prosecution of the ATI Patents filed numerous patent applications directed to subject matter that the named inventors either did not invent or which was not patentable over the prior art known to those substantively involved in the prosecution of the ATI Patents.

15.    In addition, ATI and those substantively involved in the prosecution of the ATI Patents deliberately concealed from the PTO material prior art and other material information or, in the alternative, in those instances when material prior art was disclosed to the PTO, it was buried in a mountain of immaterial prior art in an effort by ATI to mislead the PTO into overlooking the most material information.

16.    Another tactic employed by ATI and others substantively involved in the prosecution of the ATI Patents was the practice of filing numerous "continuation" and "continuation in part" applications claiming priority to earlier filed ATI applications. This practice of filing numerous continuation applications was intended to pre-date the prior art activities of others that would have otherwise barred ATI from obtaining patent coverage. ATI knew or should have known that many of its priority claims were without

merit. Worse yet, ATI's numerous patent filings were designed to be so convoluted that the examiners assigned to examine ATI's various patent applications could not meaningfully review and challenge ATI's priority claims.

17. In addition, several of the ATI Patents claim (or did claim) priority through a convoluted chain of applications reaching back to patent application serial no. 07/878,571, filed May 5, 1992. These ATI Patents include at least U.S. Patent Nos. 6,422,595; 6,712,387; 6,325,414; 6,869,100; 6,942,248; and 6,950,022. However, these patents were not entitled to claim priority to application serial no. 07/878,571 because of a lack of co-pendency. Application serial no. 07/878,571 was abandoned on March 23, 1993. The next application in the chain of priority, application serial no. 08/040,978, was not filed until some eight days later, on March 31, 1993. Upon information and belief, one or more persons substantively involved in the prosecution of the ATI Patents were aware of the lack of co-pendency yet ATI nonetheless claimed priority to application serial no. 07/878,571. Moreover, in an effort to cure this lack of co-pendency, ATI and others substantively involved in the prosecution of the ATI Patents, including David Breed and Brain Roffe, were not candid in connection with the Petitions filed under 37 C.F.R. §1.137(b) and the accompanying "Declaration of Facts". The lack of candor related to the explanation provided by ATI for the lengthy delay between the date that application serial no. 07/878,571 was abandoned (e.g., March 23, 1993) and the filing of the aforementioned petitions, the first of which was filed on August 15, 2001. Based upon this lack of candor, the PTO was misled into granting ATI's petition.

18. The foregoing activities were material and intended by ATI and others substantively involved in the prosecution of the ATI Patents to mislead the PTO. As a

14

result, the ATI Patents are unenforceable by reason of inequitable conduct.

19.    In addition, ATI and others substantively involved in the prosecution of the various ATI Patents committed additional acts of inequitable conduct, which, standing alone, render the below identified patents unenforceable.

**U.S. Patent 6,242,701:**

20.    United States Patent No. 6,242,701 ("the '701 patent") issued on June 5, 2001, from application serial no. 09/193,209, filed November 17, 1998.

21.    ATI failed to disclose several material prior art references during the prosecution of the application that issued as the '701 patent. These references include at least U.S. Patent No. 5,942,695 to Verma ("Verma"); U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et. al. (collectively referred to as "Gagnon").

22.    ATI and other substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Verma by at least May 4, 2001. On that date, Verma was cited in an Information Disclosure Statement ("IDS") in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

23.    Upon information and belief, ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe, were aware of Gagnon during the prosecution of the application that issued as the '701 patent.

24.    Verma and Gagnon are prior art to one or more claims of the '701 patent.

25.    Neither Verma nor Gagnon is cumulative to the prior art of record during the prosecution of the '701 patent.

26.    Verma and Gagnon were material to the prosecution of the '701 patent.

15

27.     The failure to disclose Verma and Gagnon was motivated by an intent to deceive on the part of ATI and others substantively involved in the prosecution of the '701 patent, including but not limited to David Breed and Brian Roffe.

28.     The claims of the '701 patent therefore, are unenforceable by reason of the inequitable conduct committed by ATI and others substantively involved in the prosecution of the '701 patent.

**United States Patent No. 6,958,451:**

29.     United States Patent No. 6,958,451 ("the '451 patent) issued on October 25, 2005, from application serial no. 10/174,803, filed June 19, 2002.

30.     The '451 patent is related to the '701 patent. The '451 patent issued from a chain of continuation-in-part applications and claims priority to the application that issued as the '701 patent. The inequitable conduct committed in connection with the '701 patent is also pertinent and related to the claims of the '451 patent. As such, the claims of the '451 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '701 patent.

31.     Furthermore, ATI and others substantively involved in the prosecution of the '451 patent engaged in further acts of commission and omission during the prosecution of the '451 patent that, standing alone, also render the claims of the '451 patent unenforceable.

32.     ATI and others substantively involved in the prosecution of the '451 patent were aware of various material prior art references during the prosecution of the '451 patent, but failed to disclose this material prior art to the PTO.

33.     One such material prior art reference deliberately concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur

16

DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

34.    Another material prior art reference deliberately concealed from the PTO is ATI's PCT patent application WO94-22693, which was published by at least October 13, 1994.

35.    Another material prior art reference deliberately concealed is U.S. Patent No. 5,482,314 to Corrado. ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, were aware of Corrado by at least November 18, 1996, when it was cited by the PTO in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

36.    U.S. Patent Nos. 5,810,382 and 5,865,463 to Gagnon et al. are additional material prior art references that ATI and others substantively involved in the prosecution of the '451 patent, including but not limited to David Breed and Brian Roffe, failed to disclose to the PTO. ATI and others involved in the prosecution of the '451 patent were aware of the Gagnon patents by at least June 25, 2002, when the Gagnon '463 patent was cited in another ATI patent application, which later issued as U.S. Patent No. 6,653,577.

37.    Another prior reference that was concealed from the PTO is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '451 patent.

38.    ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe, also failed to disclose material information regarding a litigation involving a related ATI patent, U.S. Patent No.

6,442,504. In that litigation, pursuant to an Order dated September 29, 2004, certain claims of the '504 patent, including claim 1, were held invalid over U.S. Patent Nos. 4,957,286 and 6,101,436. Claim 1 of the '504 patent is similar to at least claims 4, 24, and 34 of the '451 patent. Yet, ATI and others substantively involved in the prosecution failed to disclose to the PTO the existence of the litigation involving the '504 patent, the holding of invalidity of similar claims or the prior art references that were the basis for the invalidity holding.

39.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '451 patent.

40.    The foregoing references and information are material to the examination of the '451 patent.

41.    The failure to disclose the foregoing references and information during the prosecution of the '451 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '451 patent, including David Breed and Brian Roffe.

42.    For at least the foregoing reasons, the claims of the '451 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent Nos. 6,712,387:**

43.    United States Patent No. 6,712,387 ("the '387 patent") issued on March 30, 2004, from application serial no. 09/437,535, filed November 10, 1999.

44.    ATI and others substantively involved in the prosecution of the '387 patent were aware of material prior art but deliberately concealed that prior art from the PTO.

45.    One such reference that was concealed is GB 2 289 332, which was

18

published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '387 patent.

46.     Another material prior art reference deliberately concealed from the PTO is an SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

47.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '387 patent.

48.     The foregoing references and information are material to the examination of the '387 patent.

49.     The failure to disclose the foregoing references and information during the prosecution of the '387 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '387 patent, including David Breed and Brian Roffe.

50.     For at least the foregoing reasons, the claims of the '387 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent No. 6,325,414:**

51.     United States Patent No. 6,325,414 ("the '414 patent") issued on December 4, 2001, from application serial no. 09/737,138, filed December 14, 2000. The application from which the '414 patent issued was a continuation of the application that issued as the '387 patent.

52.     The '414 patent is related to the '387 patent. The '414 patent issued from a continuation application and claims priority to the application that issued as the '387

19

patent.  The inequitable conduct committed in connection with the '387 patent is also pertinent and related to the claims of the '414 patent.  As such, the claims of the '414 patent are likewise unenforceable because of the inequitable conduct committed in connection with the prosecution of the '387 patent.

**United States Patent Nos. 6,484,080:**

53.     United States Patent No. 6,484,080 ('the '080 patent) issued on November 19, 2002, from application serial no. 09/753,186, filed January 2, 2001.

54.     ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, knew of several material prior art references during the prosecution of the '080 patent, yet they deliberately concealed this prior art from the PTO.

55.     One such material prior art reference is U.S. Patent No. 5,602,734 to Kithil.  ATI and others substantive involved in the prosecution of the '080 patent were aware of this prior art reference during the prosecution of another ATI patent application, which later issued as the '978 patent in suit.

56.     Another material prior art reference that was withheld from the PTO is U.S. Patent No. 5,573,269 to Gentry.  ATI and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe, were aware of the Gentry reference by at least March 22, 1998, when Gentry was cited in another ATI patent application, which later issued as the '701 patent in suit.

57.     Other material prior art references deliberately concealed from the PTO are U.S. Patent Nos. 5,810,392 and 5,865,463 to Gagnon et al.; U.S Patent No. 5,714,695 to Bruns; U.S. Patent No. 6,039,344 to Mehney; and U.S. Patent No. 6,069,325 (and counterpart EP 0950560 published October 1999).  ATI and others substantively involved

in the prosecution of the '080 patent were aware of these references prior to the issue date of the '080 patent.

58.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '080 patent.

59.     The foregoing references and information were material to the examination of the '080 patent.

60.     The failure to disclose the foregoing references and information during the prosecution of the '080 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '080 patent, including David Breed and Brian Roffe.

61.     For at least the foregoing reasons, the claims of the '080 patent are unenforceable by reason of inequitable conduct.

**U.S. Patent 6,850,824**:

62.     United States Patent No. 6,850,824 ("the '824 patent) issued February 1, 2005, from application serial no. 10/613,453, filed July 3, 2003.

63.     The '824 patent is related to the '080 patent.  The '824 patent issued from a continuation-in-part application of, and claims priority to, the application that issued as the '080 patent.  The inequitable conduct committed in connection with the '080 patent is also pertinent and related to the claims of the '824 patent.  As such, the claims of the '824 patent are likewise unenforceable because of the inequitable conduct committed during the prosecution of the '080 patent.

**U.S. Patent No. 6,397,136:**

64.     U.S. Patent No. 6,397,136 ("the '136 patent") issued on May 28, 2002, from application serial no. 09/474,147, filed December 29, 1999.

65.     ATI and other substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of at least several material prior art references during the prosecution of the '136 patent but deliberately concealed this material prior art from the PTO.

66.     One of these prior art references concealed from the PTO is SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

67.     Another material prior reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '136 patent.

68.     Another material prior art reference concealed from the PTO is U.S. Patent No. 5,528,698 to Kamei et al.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least July 13, 1998, when it was cited by the PTO in another ATI patent application, which later issued as the '978 patent in suit.

69.     U.S. Patent No. 5,525,843 to Howing is another material prior art reference concealed by ATI.  ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least April 2, 2002, when ATI cited Howing in an IDS during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,942,248.

70.     WO94-22693, which is a PCT application assigned to ATI and published

22

by at least October 13, 1994, was also concealed from the PTO.

71.     SAE Technical Paper 951051 titled "Occupant Sensing Utilizing Perturbation of Electric Fields", by Jinno et al. was also concealed from the PTO. This paper was published by at least February 1997. ATI and those substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe, were aware of this reference by at least May 20, 2002, when this reference was cited in an IDS during prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

72.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '136 patent.

73.     The foregoing references and information were material to the examination of the '136 patent.

74.     The failure to disclose the foregoing references and information during the prosecution of the '136 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

75.     For at least the foregoing reasons, the claims of the '136 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,422,595:**

76.     United States Patent No. 6,422,595 ("the '595 patent") issued on July 23, 2002, from application serial no. 09/639,299, filed August 15, 2000.

77.     ATI and others substantively involved in the prosecution of the '595 patent were aware of various material prior art references, yet failed to disclose this information to the PTO during prosecution of the '595 patent.

23

78.    One such reference that was concealed is GB 2 289 332, which was published on November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '595 patent.

79.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

80.    Another material prior art reference that was concealed is U.S. Patent No. 5,482,314 to Corrado et al.  ATI and others substantively involved in the prosecution of the '595 patent were aware of Corrado by at least November 18, 1996, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 5,829,782.

81.    Also concealed from the PTO was WO97/04984, which published by at least February 13, 1997.  Upon information and belief, ATI and others substantively involved in the prosecution of the '595 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as U.S. Patent No. 6,820,897.

82.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '595 patent.

83.    The foregoing references and information were material to the examination of the '595 patent.

84.    The failure to disclose the foregoing references and information during the

prosecution of the '595 patent was motivated by an intent to deceive the PTO on the part of ATI and others substantively involved in the prosecution of the '136 patent, including David Breed and Brian Roffe.

85.     For at least the foregoing reasons, the claims of the '595 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 5,901,978**:

86.     United States Patent No. 5,901,978 ("the '978 patent) issued on May 11, 1999, from application serial no. 09/084,641, filed May 26, 1998.

87.     ATI and others substantively involved in the prosecution of the '978 patent were aware of material prior art references but failed to disclose these references to the PTO during prosecution of the '978 patent.

88.     One such reference is GB 2 289 332, which was published on November 15, 1995. The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '978 patent.

89.     Another material prior art reference that was concealed is U.S. Patent No. 5,785,347 to Adolph. ATI and others substantively involved in the prosecution of the '978 patent were aware of Adolph by at least March 22, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '701 patent in suit.

90.     Another material prior art reference that was concealed is U.S. Patent No. 5,702,123 to Takahashi. ATI and others substantively involved in the prosecution of the '978 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the application that issued as the '701 patent in suit.

91.     The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '978 patent.

25

92.    The foregoing references and information were material to the examination of the '978 patent.

93.    The failure to disclose the foregoing references and information during the prosecution of the '978 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '978 patent, including David Breed and Brian Roffe.

94.    For at least the foregoing reasons, the claims of the '978 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,942,248:**

95.    United States Patent No. 6,942,248 ("the '248 patent") issued on September 13, 2005, from application serial no. 10/114,533, filed April 2, 2002.

96.    ATI and others substantively involved in the prosecution of the '248 patent were aware of several material prior art references but concealed this prior art from the PTO.

97.    One such reference is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '248 patent.

98.    Another material prior art reference that was concealed is WO95/18028, which was published by at least July 6, 1995.  ATI and others substantively involved in the prosecution of the '248 patent were aware of this reference by at least February 12, 2001, when its counterpart, U.S. Patent No. 5,782,485, was cited in an IDS in another ATI patent application, which later issued as U.S. Patent No. 6,529,809.

99.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,702,123 to Takahashi.  ATI and others substantively involved in the prosecution of the '248 patent were aware of Takahashi by at least March 22, 1998, when it was cited in an IDS during the prosecution of the '701 patent in suit.

100.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '248 patent.

101.    The foregoing references and information were material to the examination of the '248 patent.

102.    The failure to disclose the foregoing references and information during the prosecution of the '248 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '248 patent, including David Breed and Brian Roffe.

103.    For at least the foregoing reasons, the claims of the '248 patent are unenforceable by reason of inequitable conduct.

**United States Patent No. 6,757,602:**

104.    United States Patent No. 6,757,602 ("the '602 patent) issued on June 29. 2004. from application serial no. 10/234,436, filed September 2, 2002.

105.    ATI and others substantively involved in the prosecution of the '602 patent failed to disclose a variety of material prior art references and information.

106.    For example, ATI knew of a publication titled "Occupant Sensing Utilizing Pertubation of Electric Fields", SAE Paper No. 951051, by Jinno et al.  The Jinno paper was published by at least February 24, 1997.  ATI and others substantively involved in the prosecution of the '602 patent were aware of this reference by at least May 20, 2002, when it was cited in an IDS in another ATI patent application, which later

issued as U.S. Patent No. 6,820,897.

107.    Another material prior art reference concealed by ATI is U.S. Patent No. 5,474,327 to Schousek.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Schousek by at least May 26, 1998, when it was cited in an IDS in another ATI patent application, which later issued as the '978 patent in suit.

108.    Another material reference that was concealed form the PTO is U.S. Patent No. 5,732,375 to Cashler.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Cashler by at least September 3, 2002, when it was cited in an IDS filed in another ATI patent application, which later issued as the '100 patent in suit.

109.    Also concealed was U.S. Patent No. 6,252,240 to Gillis et al.  ATI and others substantively involved in the prosecution of the '602 patent were aware of Gillis by at least January 4, 2002, when it was cited in an Office Action during the prosecution of another ATI patent application, which later issued as U.S. Patent No. 6,474,683.

110.    Another material prior art reference concealed from the PTO is GB 2 289 332, which was published by at least November 15, 1995.  The named inventors on this UK patent application are David Breed, Wendell Johnson, and Wilbur Duvall, all of whom are also named inventors on the '602 patent.

111.    Another material prior art reference concealed from the PTO is a SAE Technical Paper 940527 authored by named inventors David Breed and Wilbur DuVall entitled "Vehicle Occupant Position Sensing," which was published by at least February 1994.

112.    U.S Patent No. 5,906,393 to Mazur was also concealed from the PTO.

ATI and others substantively involved in the prosecution of the '602 patent were aware of Mazur by at least June 12, 2000, when it was cited in an Office Action in another ATI patent application, which later issued as U.S. Patent No. 6,168,198.

113.    The foregoing references and information are not cumulative to the prior art and information of record during the prosecution of the '602 patent.

114.    The foregoing references and information were material to the examination of the '602 patent.

115.    The failure to disclose the foregoing references and information during the prosecution of the '602 patent was motivated by an intent to deceive the PTO on the part of ATI  and others substantively involved in the prosecution of the '602 patent, including David Breed and Brian Roffe.

116.    For at least the foregoing reasons, the claims of the '602 patent are unenforceable by reason of inequitable conduct.

117.    Each of the foregoing activities not only renders one or more of the ATI Patents unenforceable for inequitable conduct, but also any patent that issues from an application that claims priority to or is otherwise related to any application in which inequitable conduct was committed is likewise tainted and unenforceable.

## EXCEPTIONAL CASE

ATI's attempt to read the claims of the ATI Patents on the activities and products of Honda and ATI's inequitable conduct makes this case exceptional under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

**WHEREFORE**, Honda prays for a judgment:

a)  dismissing ATI's First Amended Complaint with prejudice;

29

b) declaring that Honda has not infringed any claim of the ATI Patents and the '022 Patent;

c) declaring that the ATI patents and the '022 Patent are invalid;

d) declaring that the ATI Patents and the '022 Patent are unenforceable due to inequitable conduct;

d)e) _____ adjudging this case to be an exceptional case pursuant to 35 U.S.C. § 285, and awarding Honda its costs and attorneys' fees; and

e)f) granting such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

OF COUNSEL:

Timothy Q. Delaney
Ralph J. Gabric
Miyoung Shin
Rickard DeMille
BRINKS HOFER GILSON & LIONE
455 N. Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, IL  60611-5599
(312) 321-4200

February 16, 2007

Thomas C. Grimm (#1098)
Benjamin J. Schladweiler (#4601)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
tcgefiling@mnat.com
bschladweiler@mnat.com
Attorneys for American Honda Motor Co., Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 16, 2007, upon the following individuals in the manner indicated:

> **BY HAND**
>
> Richard K. Herrmann, Esquire
> MORRIS, JAMES, HITCHENS & WILLIAMS LLP
> 222 Delaware Avenue, 10th Floor
> Wilmington, DE  19801
>
>
> **BY EMAIL**
>
> Andrew Kochanowski, Esquire
> SOMMERS SCHWARTZ, P.C.
> 2000 Town Center, Suite 900
> Southfield, MI  48075
> Email: Akochanowski@sommerspc.com
>
> Michael H. Baniak, Esquire
> MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
> 300 South Wacker Drive
> Chicago, IL  60606
> Email: baniak@mbhb.com